# HARRY R. NICHOLSON *vs.* LUKE ELLIS.

*Illegality of Part of Consideration of a Contract—Severability—Mortgage to Secure Payment of Price of Property Sold Not Invalid by Reason of Covenant in Restraint of Trade by Mortgagee.*

A contract for the sale of the stock in trade, good will, formulas, etc., of a business concerned with the making of sulphurous acid, provided for the payment of a certain sum in cash and the securing of the balance of the purchase price by a mortgage. At the end of the contract, there was a covenant on the part of the seller not to enter into or conduct a similar business in the United States, nor to reveal to anyone the formulas thereby conveyed. Upon a proceeding to foreclose the mortgage, *held,* that, although the covenant not to engage in a similar business may be illegal, because in general restraint of trade, and therefore against public policy, yet it is not immoral, and is severable from the other part of the contract, and that the mortgage is not thereby invalidated.

When a part of the consideration for which a mortgage is executed is an unenforceable covenant in general restraint of trade, that does not operate to avoid the mortgage on the ground of illegality.

*Decided March 24th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The agreement mentioned in the opinion of the Court is as follows:

This agreement made this 30th day of April, in the year one thousand nine hundred and seven, witnesseth:

That Harry R. Nicholson, of the city of Baltimore, State of Maryland, in his own right and trading as the Baltimore Acid Works, does hereby grant, assign and convey unto Luke Ellis, of said city and State, his personal representatives and assigns, all his the said Harry R. Nicholson's right, title and interest in and to the use of the name "Baltimore Acid Works," stock in trade, book accounts, good will of the business, formulas for making No. 2 Distilled Sulphurous Acid and Benzine Bleach, to the intent and purpose that the said Luke Ellis may conduct the business of the Baltimore Acid Works free and clear from any right of the said Nicholson to interfere therein or therewith.

That the consideration for the above sale is six hundred dollars, of which amount one hundred dollars has been paid in cash, prior to the execution hereof and the balance of five hundred dollars secured by a certain mortgage on real estate and chattels situated in the city of Baltimore.

That the said Harry R. Nicholson hereby agrees not to enter into or conduct a like or similar business in the United States of America, nor to reveal to any one other than the said Luke Ellis the formulas hereby conveyed.

Witness the hands and seals of the parties hereto. Harry R. Nicholson, (seal); Luke Ellis, (seal). Test—Charles E. Ecker.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Charles E. Ecker,* for the appellant.

It was claimed that the covenant in the contract whereby the mortgagee, as vendor thereunder, agreed "not to enter into or conduct a like or similar business in the United States of America," being in restraint of trade, was illegal, and made the whole contract illegal and void, and consequently the mortgage was illegal and void.

Admitting, for the sake of argument, that the covenant is illegal does it render the whole contract illegal? "If the consideration be valid and if several promises founded on it be illegal, the legal promises are enforceable." *United States* v. *Bradley,* 10 Peters, 360; *Anson's Law of Contracts,* page 254, Note 1; *Wald's Pollock on Contracts,* 3rd Edition, 482.

"The rule in such cases, where there is no imputation of *malum in se,* is that the bad parts do not affect the good. The valid may be enforced." *Gelpcke* v. *City of Dubuque,* 1 Wallace, 221. *Anson* cites the case of *Maxim-Nordenfelt Gun Co.* v. *Nordenfelt,* where the Court of Appeal held, "that the covenant not to compete with the company in any business which it might carry on was a general restraint of trade, that it was void, but that it was distinct and severable from the rest of the contract."

The case of *Fishell* v. *Gray, Receiver,* 60 N. J. L. 5, is directly in point. In this case Fishell sold his credit insurance business to the United States Credit System Company, which company subsequently became insolvent and was represented in the case by Gray, receiver. By a sealed agreement Fishell had assigned to the company the good will of his business, together with certain personal property, and in addition agreed "not to interest himself or engage in or have others interest themselves for his benefit or in his behalf in any manner, in any company, corporation or firm whose business is that of guaranteeing merchants or others against loss in business."

The action was brought to recover the moneys agreed to be paid by the company in return for the transfer above men-

tioned and the covenants in the agreement on the part of the plaintiff. The jury, under the instructions of the Court, found for the plaintiff, and the case went up on a motion to set aside the verdict.

The principal contention against a recovery was that the agreement was illegal and void by reason of the stipulation above quoted, or, as the Court puts it, "the proposition posited is that, as this part of the consideration for the defendant's promise is illegal, the entire contract falls, and that no part of it can be enforced."

The Court after reviewing the law, held that the covenant was merely one that the law would not enforce, but the party might perform it if he chose; that it did not make the contract illegal, and uses the following language: "According to the principle forming the basis of the decision in the *Erie Railway Case,* just cited, that the presence in a contract of one of these inhibited undertakings does not in any degree whatever either add to or deprive it of its legal efficacy, standing alone, it will not constitute a legal consideration, nor will it to any extent be executed. The later decisions upon the subject appear to regard this as the true principle."

But is the covenant illegal? "An agreement in restraint of trade will be upheld if possible." · 2 *Parson on Contracts,* 911.

The rule is that "such contracts may be unlimited as to time, but must be limited as to space," and "what limitation as to space will be allowed depends upon the facts in each case." "It must not be more than sufficient to afford a reasonable protection to the party for whose benefit the stipulation is made. The test as to space is whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public." See also *Guernand* v. *Dandelet,* 32 Md. 561.

The contract limits the space to the United States, and unless it is shown that this is unreasonable as to the convenantee

or injurious to the public, it cannot be considered illegal and unenforceable. See 24 *Am. & Eng. Ency. of Law,* 846; *Fowle* v. *Park,* 131 *U. S.* 88; 2 *Parsons on Contracts,* 910.

This was a contract for the sale of a business for the manufacture of two preparations according to secret formulas, and it was only reasonable that the purchaser be given the fullest benefit he could derive from his purchase. The covenant is ancillary to the main contract, and if reasonable and no broader than is necessary to save to the covenantee the rights and privileges purchased, even though the area covers the whole United States, the covenant may be enforced. *National Enameling & Stamping Co.* v. *Haberman,* 120 Federal Reporter, 415.

Even "a restraint unlimited as to space has been held not unreasonable, where the subject-matter of the contract is a trade secret." *Wiley* v. *Baumgardner et al.,* 97 Ind. 66; *Tode et al.* v. *Gross,* 127 N. Y. 480; *National Gum & Mica Co.* v. *Braendly,* 27 N. Y. App. Div. 219; *James Alcock* v. *Andrew Giberton and John Binesse,* 5 Duer N. Y. 76; 24 *Am. & Eng. Ency. of Law,* 849.

And a covenant not to impart a secret or vend the article is valid. *Hardy* v. *Seeley,* 47 Barb., page 428; 9 *Cyc.,* 538.

The covenant does not injure the public because the public are not prejudiced by the transfer of the business to the defendant. If the plaintiff had kept it he would have used the formulas and kept them secret, and it is no consequence to the public whether the secret art be used by the plaintiff or defendant. *John Vickery* v. *Jonas Welch,* 19 Pickering (Mass.), 523; *Fowle* v. *Park,* 131 U. S. 88.

The public are not deprived of the services of the plaintiff, for he is not precluded from entering into some other business different from the manufacture of the aforementioned two secret preparations or similar ones. *Pond's Extract Co.* v. *Humphrey's Specific Homeopathic Co.,* 50 How. Pr., page 358.

*Charles G. Baldwin* and *G. Ridgely Sappington,* for the appellee.

The agreement on the part of Nicholson "not to enter into or conduct a like or similar business in the United States of America" is unquestionably in general restraint of trade, and therefore illegal and void. This agreement is in general restraint of trade—first, because it is unlimited as to time and embraces the entire country. *Oregon Steam Navigation Company* v. *Winsor,* 20 Wallace, 64; *Gibbs* v. *Baltimore Gas Co.,* 130 U. S. 396; *Lanzit* v. *Sefton Mfg. Co.,* 184 Ill. 326; *Lawrence* v. *Kidder,* 10 Barb. 647; *Guernand* v. *Dandelet,* 32 Md. 561; *Consumers' Oil Co.* v. *Nunnemaker,* 142 Ind. 560; *Lufkin Rule Co.* v. *Fringeli,* 57 O. St. 596; *Gamewell Fire Alarm Telegraph Co.* v. *Crane,* 160 Mass. 50; *Mallinckrodt Chemical Works* v. *Nemnich,* 83 Mo. App. 6, 169 Mo. 399.

This agreement is also illegal and in general restraint of trade on account of the covenant not to engage in a "like or similar business." In *Callahan* v. *Donnolly,* 45 Cal. 152, the Court, in passing on such an agreement, says: "The contract which provides that Donnolly will not engage in the manufacture of 'Donnolly's Yeast Powders,' *nor in any branch of the yeast-powder business,* is in the latter clause plainly in restraint of trade, and therefore void."

The covenant "not to enter into or conduct *a like or similar business"* in this case is broader than is to be found in any adjudicated case, and it is easy to see to what lengths it might be stretched if a restraining injunction against the covenantor were asked. On this point alone, the agreement is flagrantly illegal. *Ramsay* v. *Whitback,* 183 Ill. 550; *Saratoga Bank* v. *Kane,* 44 N. Y. 87.

The case at bar does not come within the exception established by *Oregon Co.* v. *Winsor,* 20 Wall. 64; *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473, as it is unreasonable on its face, and there are no facts or special circumstances before the Court to justify the excessive restraint. These cases, too, involve the transfer of a business so wide in its extent as to

lead the Court to hold the restriction reasonable as to terri-
tory, being necessary for the protection of the buyer. This
is entirely different from the case at bar, where the restriction
is unquestionably unreasonable on its face, and no facts or
circumstances whatever are before the Court by which it
might be justified or brought within any exceptions to the
general rule.

"The question is, whether under the particular circum-
stances of the case, and the nature of the particular contract
involved in it, the contract is or is not reasonable." *Gibbs*
v. *Baltimore Gas Co.*, 130 U. S. 396; *Berlin Machine Works*
v. *Perry*, 71 Wis. 495; *Lanzit* v. *Sefton Mfg. Co.*, 184 Ill.
326.

Even in these cases, however, the agreement must not "vio-
late the two indispensable conditions—that the other party
be not prevented from pursuing his calling, and that the coun-
try be not deprived of the benefit of his exertions." *Oregon
Steam Navigation Co.* v. *Winsor*, 20 Wall. 64.

Both of these are violated by the agreement not to engage
in a "like or similar business in the United States," and, fur-
ther, no special circumstances are shown.

There is no proof in this case that the "formulas" men-
tioned in the agreement of April 30, 1907, are secret proc-
esses; and even if they were, the covenant never to engage
in any "like or similar" business is in general restraint of
trade, and illegal, as a man in selling a secret process cannot
bind himself from again engaging in the same business with-
out limit as to time or territory. *Frazer* v. *Frazer Lubricator
Company*, 18 Ill. App. 450; *Gillis* v. *Hall*, 2 Brewster, 342;
*Brewer* v. *Lamar*, 69 Ga. 656; *Tecktonius* v. *Scott*, 110 Wis.
441.

It will be seen from these cases, that while a person selling
a secret process may covenant never to reveal the secret and
never to make the same article himself, he cannot bar himself
from ever making a similar article, much less agree never to
enter into a similar business, which is even broader. In the

case at bar the agreement never to "enter into or conduct a
like or similar business" means he could never enter into any
acid or bleaching business, if such agreement were legal. This
is plainly in restraint of trade, as if the formulas conveyed be
secret processes invented by him by this agreement the coun-
try is deprived of any invention of a like or similar nature,
even though it be much better, which proves the agreement
to be unreasonable.

This illegality is a failure of the entire consideration, for
the agreement of April 30, 1907, is not severable, and a part
of it being illegal the whole is void. In *Bishop* v. *Palmer,*
146 Mass. 469, the plaintiff sold for $5,000 his plant, ma-
chinery, etc., and agreed not to engage in the business for five
years, with no limit as to space. The Court says: "The de-
fendant's promise which is declared on was made in considera-
tion of the sale and delivery of the business, plant, property
and contracts of the plaintiff, and of his faithful performance
of the covenants and agreements contained in the written in-
strument signed by the parties. The parties made no appor-
tionment or separate valuation of the different elements of
the consideration. The business, plant, property, contracts
and covenants were all combined as forming one entire con-
sideration. There is no way of ascertaining what valuation
was put by the parties upon either portion of it. There is
no suggestion that there was any such separate valuation,
and any estimate which might now be put upon any item
would not be the estimate of the parties.. As a general rule,
when a promise is made for one entire consideration, a part
of which is fraudulent, immoral or unlawful, and there has
been no apportionment made or means of apportionment fur-
nished by the parties themselves, it is well settled that no ac-
tion will lie upon the promise. If the bad part of the consid-
eration is not severable from the good, the whole promise
fails." See also *Emerson* v. *Townsend,* 73 Md. 224.

"If two considerations, one legal and the other illegal, are
so blended that there cannot be a separation, the entire consid-

.eration will be deemed bad and the contract fail." *Crowder* v. *Reed,* 80 Ind. 1; *Moore* v. *Bonnett,* 40 Cal. 251.

The agreement of April 30, 1907, being illegal, the mortgage given to secure the notes, being part of an illegal transaction and executed to secure its performance, is illegal and void, and the Court will not assist in carrying out the illegal agreement by foreclosing the mortgage, which is executory. *Wildey* v. *Collier,* 7 Md. 273; *Basket* v. *Moss,* 115 N. C. 448.

"Mortgages are not executed contracts when made to secure due performance of illegal agreements." *Greenhood on Public Policy,* page 73; *Morton* v. *Fletcher,* 12 Am. Dec. 366; *Shropshire* v. *Glasscock,* 31 Am. Dec. 189.

WORTHINGTON, J., delivered the opinion of the Court.

This case comes before us upon appeal from the Circuit Court of Baltimore City, and presents the rulings of that Court upon exceptions to the ratification of a mortgagee's sale made under and by virtue of a consent decree obtained in that Court on July 8th, 1908.

The lower Court sustained the exceptions, annulled the sale, and declared the decree void, on the ground that the consideration for the mortgage and mortgage notes was illegal.

The consideration in this case is held to be illegal because the agreement containing the promise to pay the money secured by the mortgage contains, in addition to a transfer of certain property rights and secret formulas, to the promisor, also a covenant on the part of the promisee to refrain from doing certain things which are deemed to be illegal as in restraint of trade; and the argument is that therefore the whole consideration is tainted and insufficient to support a promise.

It seems to be well settled that any stipulation to perform an immoral act would taint the entire contract, and render it void *in toto. Anson on Contracts,* p. 251; *Erie Ry. Co.* v. *Union Locomotive Co.,* 6 Vroom, 240; *Emerson* v. *Townsend,* 73 Md. 224. So also where the entire consideration for a promise is illegal, merely, though not immoral, the contract is

void. *Wildey* v. *Collier,* 7 Md. 273. So also it has been held that where a part of the consideration is good and part illegal merely, though not contrary to good morals, if the bad part of the consideration is not severable from the good, the whole promise fails. *Bishop* v. *Palmer,* 146 Mass. 469. On the other hand, the Supreme Court of New Jersey, in a well-considered opinion by BEASLEY, Chief Justice, maintained that a stipulation which was not immoral would not vitiate or avoid the entire agreement, although such stipulation was so blended with the residue of the consideration, consisting of valuable rights and interests, as not to be severable from it. *Fishall* v. *Gray,* 60 N. J. L. 5.

The learned Judge in that case said: "There is nothing immoral or criminal in a stipulation not to engage in a certain business. A man may bind himself to such an abstention without incurring any legal penalty. The only effect is that such an agreement cannot be enforced, either at law or in equity." Further on in the same opinion he said: "If it be true that by reason of the promise of the plaintiff to abstain from this business being blended with the residue of the consideration, that consisted of valuable interests transferred to the company, will prevent a recovery of the price agreed to be paid for such property, and will enable the company to retain it without giving the equivalent agreed on, a result certainly obtains that would be both wholly unconscionable and impolitic."

In a later New Jersey case (1901), the Court of Errors and Appeals of that State said: "The contract between the parties was based on sufficient reciprocal consideration, apart from the plaintiff's restrictive agreement. Both parties must be presumed to have known the law as to contracts in restraint of trade, and therefore the restrictive covenant, if invalid, ought not to be held to avoid the valid covenants Contracts in restraint of trade are loosely spoken of as 'illegal contracts;' it would be more accurate to style them 'unenforceable contracts.'"

These cases and others that might be cited show that there is some contrariety of opinion as to how far a partial illegality of consideration involving no moral turpitude will affect the whole contract.

We think, however, that the present case is free from difficulty, because, assuming, without deciding, that the covenant contained in the agreement of date April 30th, 1907, is illegal as in restraint of trade, yet the covenant is so far distinct from the residue of the consideration for which the promise to pay the money secured by the mortgage was made, as to be easily severable from it.

The agreement above mentioned which we will ask the reporter to set out in full in his report of this case is, in effect, the sale and transfer of all the right, title and interest of Harry R. Nicholson, the appellant, in and to the use of the name "Baltimore Acid Works," also of the stock in trade, book accounts, good will of the business and formulas for making No. 2 Distilled Sulphurous Acid and Benzine Bleach, in consideration of the payment to him, by Luke Ellis, the purchaser, of the sum of six hundred dollars. One hundred dollars of which was paid in cash and promissory notes, secured by mortgage, given for the residue.

In a separate paragraph at the end of the contract is the covenant on the part of Nicholson not to enter into or conduct a like or similar business in the United States, nor to reveal to anyone other than the said Luke Ellis the formulas thereby conveyed to him.

No part of the purchase price is expressed to be paid for this covenant, and so far as appears from the language and form of the agreement, the covenant was an afterthought, voluntarily entered into by Nicholson as a better protection to his grantee. At any rate, the covenant is clearly separable from the other part of the consideration, and even if it be illegal as against public policy, it contains nothing contrary to good morals, and nothing for which a legal penalty is incurred, and therefore it does not taint the whole agreement so as to render it void *in toto*.

As was said by CHIEF BARON POLLOCK in *Green* v. *Price,*
13 Mees. & W. 695 : "It is not like a contract to do an illegal
act. It is merely a covenant which the law will not enforce,
but the party may perform if it chooses."

There is no intimation that the defendant in this case has
not faithfully observed the covenant, but we are asked to de-
clare void a mortgage given by the purchaser to secure the bal-
ance due of the purchase money agreed to be paid for a cer-
tain business, stock in trade, good will and secret formulas,
merely because the seller, for the better protection of the pur-
chaser at the end of the agreement added the restrictive cove-
nant above mentioned.

As this covenant is not so interwoven with the residue of
the consideration as to be inseverable from it, we think the
promissory notes, secured by mortgage, given for the residue
of the purchase money, are valid and enforceable contracts,
and that there was error in the ruling of the lower Court hold-
ing the contrary. It follows that the decree of the lower Court
must be reversed and the cause remanded for further proceed-
ings.

> *Decree reversed with costs, and cause re-
> manded.*