ABELL ET AL. *v.* SAFE DEPOSIT & TRUST CO. OF
BALTIMORE, TRUSTEE, ET AL.

[No. 95, October Term, 1948.]

*Decided March 9, 1949.*

440

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph T. Molz* for the appellants.

*Harry N. Baetjer*, with whom were *John Henry Lewin* and *Venable, Baetjer & Howard* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

This case was instituted in the Circuit Court of Baltimore City by Margaret Anna Abell et al. (called the Abells) against The A. S. Abell Company, a body corporate (called the Company), and the Safe Deposit and Trust Company of Baltimore, a corporation, Trustee (called the Trustee), wherein the Abells prayed: (1) that a release dated April 24, 1947, from the Trustee to the Company, and duly recorded, be declared null and void; (2) to construe the provisions for redemption of certain bonds issued under a certain indenture of mortgage here-

after referred to; (3) that the lien of the Abells on the property embraced by the mortgage be applied to property acquired by the Company subsequent to the release of said mortgage; (4) to compel the Trustee to bring into court the original election of the Company made by the Company to the Trustee whereby it exercised its election to use the proceeds of a fire loss for redemption of bonds; and (5) for general relief.

After answers were filed, the case was tried on an agreed statement of facts, and the chancellor refused relief and dismissed the bill, and the case comes here on appeal.

The facts of the case are substantially as follows: The Company issued one thousands bonds of the par value of $1000 each, and to secure the payment thereof when redeemed or matured, together with interest thereon at 5% per annum, it executed an indenture of mortgage to the Trustee, dated as of January 1, 1910, for one million dollars, on all of its property. The last of these bonds were to mature on January 1, 1965.

The third clause of the mortgage is as follows:

"THIRD: The said Abell Company further covenants and agrees to and with the said Trustee that commencing with the first day of January, nineteen hundred and fifteen, it, the said Abell Company, will annually on the first day of January in each year until the maturity of said bonds, retire and redeem twenty of said bonds, *in the order of their serial numbers,* at par and accrued interest, and will to this end pay to the Trustee within five days before said dates the sum of Twenty thousand dollars with interest due on said twenty bonds to be applied to such payment; and on such payment interest on the bonds to be paid shall cease; *the Company shall have no right to pay any other bonds prior to maturity, except those hereafter provided to be redeemed out of the unused proceeds of insurance.*"

The fourth clause of said indenture requires the Company "to insure and until the full payment of said bonds to keep insured against loss by fire such portion of the

mortgaged premises as may be subject to injury or destruction by fire and to the extent of its insurable value, and to cause the policies to be so framed or endorsed as to be payable in case of loss to the Trustee". The Company is given the option, under this clause, to apply the proceeds of insurance policies that might be collected for loss by fire to repair or restoration of the property damaged, or to "elect to have the same applied to the redemption of said bonds * * * *and the Trustee shall thereupon apply such proceeds to the payment and redemption of said bonds in the order of their serial numbers* * * *." Italics supplied.

By January 1, 1928, 280 of these bonds were redeemed in accordance with said "THIRD" paragraph of the mortgage, and on October 13, 1928, the Company had purchased 481 bonds from its general funds. At that time title to 239 bonds stood in the name of Walter W. Abell, Trustee of the estate of Edwin F. Abell. On December 31, 1928, Mr. Spamer, Second Vice-President of the Trustee, wrote Mr. Abell as follows:

"Under the terms of the A. S. Abell Company Mortgage that Company is to place with us $20,000 each January 1st to redeem outstanding bonds, and as the A. S. Abell Company has acquired all outstanding bonds except those controlled by you, we beg to advise that we will be prepared to take up on January 2, 1929, 20 of those held by you."

Mr. Abell declined to deposit 20 bonds for redemption in accordance with Mr. Spamer's letter, but contended that the bonds held by him at that time could only be redeemed serially in accordance with the "THIRD" paragraph of the mortgage. This was acceded to by the Trustee and from December 1, 1929, to January 1, 1941, 86 bonds held under this trust were redeemed serially. The Abell trust terminated in 1941.

At the time this case was instituted twenty-nine (29) bonds were held by the plaintiffs and nine hundred and seventy-one (971) bonds had been purchased by the Com-

pany, or redeemed in accordance with the provisions of the "THIRD" clause of the mortgage.

On October 4, 1946, a fire occurred, severely damaging the property of the Company, and on April 10, 1947, the Trustee received from the insurance companies, in payment of claim for loss, $108,449.65. On April 18, 1947, the Trustee notified the appellants that in accordance with the "FOURTH" paragraph of the mortgage the redemption of the bonds was accelerated by the fire loss, and called the bonds of the appellants to be redeemed at the price of $1000, plus accrued interest to July 1, 1947. The plaintiffs denied that the bonds they held were callable on July 1, 1947. The Company bought sixty-four (64) outstanding bonds from the proceeds of the insurance, leaving a balance of thirty-five (35) bonds outstanding. At the argument before this court it was admitted that at this time of the total of 1000 bonds issued in 1910, there are only thirteen of the Abells' bonds and six others outstanding, not including bonds which in any view have become serially redeemable preceding this suit. On April 22, 1947, the Trustee executed a release of the mortgage to the Company.

The questions presented for our decision are purely questions of law.

The mortgage of January 1, 1910, by the Company to the Trustee was a contract under seal, entered into by the Company with the bondholders, and the Trustee was the fiduciary to administer the contract on behalf of the bondholders. It was without power to relinquish any rights of the bondholders, for to do so would be a violation of its trust, and a court of equity will not countenance a breach of trust by a fiduciary. Under the "THIRD" and "FOURTH" paragraphs of this mortgage the method of redeeming the bonds is clearly and specifically set out, and no construction of these paragraphs is necessary. They are clear, certain, unambiguous, and speak for themselves. These bonds were to be redeemed serially, and in no other way. From January 1, 1915, until the entire issue was redeemed, twenty bonds were to be redeemed

serially each year, and no more. This was a valuable right in the bondholders. The bonds provided a good investment at high interest rate and some of them would run for a long term. To redeem these bonds in any other way than provided by the mortgage was a violation of the contract by the Company, and a breach of trust by the Trustee.

During the period prior to October 13, 1928, the Company acquired 481 bonds. They did not acquire them by redemption, because during that period 280 bonds were redeemed under the "THIRD" paragraph of the mortgage. The Company, therefore, purchased 481 bonds during that period. This the Company had a right to do. *American Brake Shoe & Foundry Co. v. New York Rys. Co.,* D. C., 277 F. 261, at pages 281-282. It was stated in the brief of appellees that this matter was ancient history, and could be forgotten; that these 481 bonds were acquired by the Company and cremated, and thus were no more, and belonged to the realm of forgotten things. But, although the Company could purchase outstanding bonds, it could not ignore the bonds so purchased when it came to redeem bonds under the "THIRD" paragraph. The serial numbers of the bonds purchased should be considered in the redemption of the twenty (20) bonds to be redeemed yearly. According to the contention of the appellees, only 239 bonds then outstanding should have been considered in the redemption of bonds subsequent to 1928. This would mean that instead of these bonds maturing in 1965, as provided by the mortgage, they would have matured at a far earlier date, and thus the terms of the mortgage would have been violated and the rights of the bondholders breached. This is equally true of the bonds redeemed by the proceeds of the insurance policies. The amount of the proceeds received from insurance policies for fire loss was more than sufficient to pay all outstanding bonds and interest thereon, but the "FOURTH" clause of the mortgage provides that bonds redeemed from that source should be redeemed serially. The Trustee had no right to send out a call to

redeem all bonds outstanding in 1947, and to apply the insurance proceeds for the purpose. Indeed, the Trustee, in 1928, endeavored to have Walter W. Abell, Trustee, surrender 20 bonds for redemption, thus ignoring the right in Abell to have his bonds redeemed serially. This Abell refused to do, and the bonds were redeemed serially. From that date until his death these bonds were redeemed serially. Thus, the Trustee recognized for years the right of bondholders to have their bonds redeemed serially, in accordance with the "THIRD" clause of the mortgage.

It is contended by counsel for appellees that the case of *Missouri, K. & T. Ry. Co. v. Union Trust Co.*, 156 N. Y. 592, 51 N. E. 309, 311, has no application here. With this we do not agree. The facts there considered were, briefly, these: In June, 1870, the Tebo & Neosho Railroad Company of Missouri issued 2000 7% gold bonds at $1000 par, payable on the first day of June, 1903. These bonds were secured by a mortgage which provided that on the first day of June, 1873, and each year thereafter, it would pay to the Union Trust Company, Trustee, as a sinking fund, a sum equal to 1% of the aggregate principal of the bonds secured thereby, together with interest. This sum was to be used yearly to redeem bonds, drawn by lot. This railroad was absorbed by the M. K. & T. Railroad Company. This provision of the mortgage was complied with the first year, and three bonds were redeemed in accordance with its provisions. It was ignored thereafter. On February 11, 1895, the M. K. & T. offered to pay to the trustee under the mortgage $193,000 with the request that the same, less the amount necessary to cover costs, should be applied by the trustee for the redemption of the principal and interest of the outstanding bonds. The trustee refused to do this and the suit was instituted to require it to do so. The court said:

"When the bonds in question were issued and negotiated, each bond had an equity represented by the chance that it might not be drawn by lot for redemption until it became payable, in 1903. As the bonds drew a high

rate of interest, that equity was valuable, and each bond-holder had the right to insist that his bond should not be redeemed except in strict accordance with the contract contained in the mortgage. That contract has not been performed by the mortgagor or the plaintiff, and to now permit all the outstanding bonds to be called in, by suddenly, after the lapse of more than 20 years, enforcing the sinking-clause provision, on the basis suggested, would enable the plaintiff to take advantage of its own wrong. * * * Whatever the plaintiff has done outside of the contract, by way of paying or acquiring bonds, cannot be considered as done under the contract, or in any way credited upon the sinking-fund clause. While we consider that clause as still in force, it cannot be enforced upon any basis less favorable to the outstanding bond-holders than if the contract had been performed instead of violated. The plaintiff cannot extinguish the outstanding bonds by commutation, but only by contract, and the bonds paid were not redeemed under the contract."

The mortgage in this case, under its terms, could not be legally released until all of the bonds covered by the issue of 1910 were redeemed serially, and the principal and interest paid thereon. While it was lawful for the Company to use its general funds to purchase bonds, yet the serial number of each bond so purchased by it should have been considered in selecting the twenty bonds required to be redeemed yearly under the "THIRD" clause of the mortgage. We hold that the release of the mortgage by the Trustee to the Company was a violation of the contract between the Company and the bondholders, and a breach of duty by the Trustee.

But what shall we do with this case, for, notwithstanding what we have said, we do not view with entire complacency the attitude of appellants? According to appellants' brief, the last bond of the series will mature January 1, 1959, some falling due in the intervening years, the last held by any of the Abells finally becoming due on January 1, 1957. If we grant the relief prayed, the result will be that the appellants will have a million dol-

lar mortgage to secure their thirteen (13) bonds of the par value of $1000 each with interest. In this they are adamant. They have been offered liberal terms to effectuate a purchase of these bonds but have refused. At the argument counsel refused to name a sum that would purchase these bonds. It is well known that the Company intends to erect a large and modern building to carry on its expanding newspaper business. The appellants may interfere with the Company in financing this project. What the plaintiffs are trying to do is to specifically enforce terms of the mortgage by injunctive relief, and courts of equity will not specifically enforce a contract unless, among other things, the circumstances surrounding a given case appeal to the conscience of the court.

"A suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance is subject to the principles which apply to an application for the latter remedy, and it is a settled rule that specific enforcement of an agreement will not be decreed when, as in this case, the injury to the defendant would be far greater than the benefit which the plaintiff might derive from that result". *Smith v. Myers*, 130 Md. 64, at page 67, 99 A. 938, at page 940.

In *McDowell v. Biddison*, 120 Md. 118, at page 127, 87 A. 752, at page 756, it is said:

"If to enforce specifically an agreement would do one party great injury and the other but comparatively little good, so that the result would be more spiteful than just, the chancellor will not require its execution". See *Linthicum v. Washington, B. & A. Electric R. Co.*, 124 Md. 263, 92 A. 917; *Hurwitz v. Buck*, 147 Md. 566, 128 A. 750; *Schnepfe v. Consolidated Gas, etc., Co.*, 164 Md. 630, 165 A. 889.

Appellants, if they choose, for any reason or for none at all, have a right to retain their bonds till maturity and meanwhile receive interest payments when due. We have no occasion to decide which (if any) of various remedies that might be suggested are available to enforce

this right. The mortgage expressly authorizes foreclosure for non-payment of interest or other breach of covenant. On its face foreclosure might seem to defeat appellant's end, but perhaps in an action at law or in foreclosure damages might be recovered for an entire breach of contract, measured by the present value of a bond of the same quality, *e. g.*, a U. S. bond, and the same "yield" and maturity. This could readily be computed from "bond tables"—and might be more or less than the Company has offered for its outstanding bonds. We make these suggestions only to pass them by without expressing any opinion concerning them. What we do decide is that a court of equity will not devise a remedy by injunction, or in the nature of specific performance, which will harass or injure the Company and is not necessary to protect bondholders against any actual threatened impairment of their security. A court of equity will not specifically enforce a contract for a pound of flesh.

The relation between the Company and its bondholders is only that of debtor and creditor. The fact that many bondholders are represented by one trustee does not give them any greater rights under the deed of trust than a single mortgagee would have under a mortgage containing similar provisions. Appellants cannot charge that any actual impairment of their security has occurred or is threatened. For aught that appears to the contrary, the Trustee still holds considerably more than $19,000 of insurance proceeds as security for $19,000 of bonds, though we do not hold it is obliged to do so. We express no opinion whether or not the trustee may "apply such proceeds to the payment and redemption of said bonds in the order of their serial numbers" by reimbursing the Company for bonds previously bought and retired which, if not so retired, would not have been redeemable "in the order of their serial numbers" out of the insurance proceeds. In addition to all other security for their bonds appellants now have the recital of the Trustee in the release that funds for the payment of outstanding bonds,

with interest to July 1, 1947, have been deposited with the Trustee for payment of the bonds.

If, in the light of our construction of the mortgage, the mere fact that $19,000 of bonds are still outstanding may appreciably affect refinancing by the Company, that is a result of issuing mortgage bonds without reserving an unqualified right of redemption at any time. In this mortgage unusual provisions were inserted to make it clear that no such right was reserved. We cannot change the contract in that respect.

*Decree affirmed, with costs.*