PIERSON et ux. v. PYLES, Executor and Trustee, Etc.

[No. 190, September Term, 1963.]

*Decided March 10, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*Harry L. Durity* for the appellants.

*C. Calvert Lancaster,* with whom were *Adrian P. Fisher* and *Fisher & Lancaster* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The appellants, Milton T. Pierson and Jean Hess Pierson, his wife, entered into a contract for the purchase of lot 30 in block 2 as shown on a plat of an unrecorded subdivision known as Gordon's Corner, Spaldings District, in Prince George's County. The record title to the property was in W. Eugene

Pyles at the time the contract was made. He has since died, leaving a will which vested title in Harvey E. Pyles, Sr., appellee, as trustee.

The contract, dated June 13, 1946, provides, *inter alia,* as follows:

> "The total purchase price of the aforesaid property is Fifteen Thousand ($15,000.00) Dollars, of which sum the above deposit of Sixty-five ($65.00) Dollars is to be a part; the purchasers covenant and agree to pay the balance of the purchase price, amounting to Fourteen Thousand Nine Hundred Thirty-five ($14,-935.00) Dollars at the rate of Sixty-five ($65.00) Dollars per month, including interest on the unpaid balance amounting to four per centum (4%) per annum, without the privilege of anticipating said monthly payments, which monthly payments are also to include all taxes and fire insurance which the sellers are hereby authorized and directed to pay from the aforesaid monthly payments of $65.00."

At the inception of the contract in June 1946 adjusted taxes in the amount of $38.78 were added to the principal amount due, and the first payment of $65.00, made July 18, 1946, had deducted from it $49.79 for interest, thus permitting $15.21 to be applied to the reduction of the principal. Assuming that this approximate amount of reduction continued, it would require 333 months, or 27 ¾ years to reduce the principal indebtedness by $5,000. By another clause the parties had provided that when the purchasers shall have paid this amount on account of the principal the seller shall execute a deed for the property and take back a mortgage for the unpaid balance of $9,935, payable on the same terms and conditions.

Payments of $65 per month have been regularly paid up to and including the time of the filing of this proceeding, and as of June 16, 1962, the balance due on the contract was $15,222.44, a sum greater than the original purchase price. The reason for this curious result is that the assessable basis of the property has arisen sharply since 1946, causing an increase in the annual taxes to a point where eventually no money was available for

amortization of principal. The trustee has refused to permit the acceleration of the contract by permitting the purchasers to pay the purchase price therefor, but is willing to accept from them the annual real estate taxes, as well as the insurance premiums covering the property, over and above the monthly payments.

The vendees at the time of the hearing were residing in Ohio, and the premises had been rented for some time prior to this litigation for $100 per month, which amount had been collected by the vendees. In addition, the appellants had signed a contract to sell the property for $17,000 (the catalyst in this proceeding no doubt).

Appellants filed a bill of complaint for declaratory relief, seeking interpretation and construction of the contract. Appellee demurred to the bill, but the court overruled the demurrer, whereupon an answer was filed. The case was heard by Judge Parker upon a stipulation, admission of facts and genuineness of documents entered into.

The court found that the contract should reasonably be interpreted and construed to limit the payments to be made thereunder by the appellants, and that they should not have the privilege of requiring the seller or his successors in interest to accept a greater amount in monthly payments. The decree did, however, provide that the appellants shall have the option to pay the taxes and insurance premiums over and above the monthly payments. The court also construed a provision in the contract regarding payment of $5,000 on the principal amount as a sum to be paid in the ordinary course of amortizing the balance due on the purchase price before the purchasers would be entitled to a deed for the property.

From the decree of the lower court the vendees have taken this appeal. They contend that in the light of the events which have occurred since the inception of the contract, the construction placed upon it by the court below impaired the rights and obligations of the parties. They also argue that the court's refusal to allow the appellants to pay the sum of $5,000 and get a deed to the property from the appellee amounts to an unreasonable restraint on alienation. It is the trustee's position that the vendor's purpose in entering into the contract was to create an income bearing investment, and that to permit the vendees

to prepay the purchase price would deprive the estate of its legal rights under the contract.

That the appellants have been saddled with a bad bargain is not sufficient cause for a court of equity to redraft the provisions of the contract in order to lighten their burden. *Hill Co. v. Pallottine Fathers,* 220 Md. 526, 532, 154 A. 2d 821, and *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183, are just two of our many decisions applying this general principle of law. It is significant that appellants made no claim of fraud, duress, undue influence or even mutual mistake, any one of which might be a ground for relief if alleged and proved.

It will be noted that the lower court gave some relief to the appellants by allowing them to pay taxes and insurance premiums from monies other than the monthly payments. This would allow amortization of the balance due under the contract in about 37 years as the situation stood at the time of the court's decree. Appellants attack this action of the lower court on the ground that by its decree it sanctioned a unilateral modification of the contract since the modification was derived from the appellee's answer only, wherein he stated his willingness to accept from the appellants the annual real estate taxes and insurance premiums over and above the $65 monthly payments.

It is true that the oral opinion of the court expressed the view that the "stipulation" which the appellee made in its answer to the bill of complaint "solved the problem." Nevertheless, we think that the pertinent clause of the contract, when read in its entirety, permits taxes and insurance payments to be made in addition to the monthly payments of $65.

Assurance that taxes and fire insurance premiums would be paid was for the mutual benefit of the parties. Inclusion of these items as a part of the $65 paid monthly was the means by which both parties could be certain that taxes and insurance would be timely paid. It was, in our opinion, directory but not mandatory that they be a part of the $65. The seller was *authorized* to pay them, and if the purchasers desired that they be included, the seller was directed to pay them to the appropriate recipients. Since the lower court decree makes the payment of these items from a source aside from the monthly sum of $65 optional with the purchasers, appellants, its force is no more

than declaratory of the interpretation which we think the judge would have been justified in making independent of the consent expressed in the answer to permit payment of these items in this manner. The result was the same and we think is supported by our own construction of the terms of the contract.

Little need be said with regard to the contention that the contract permits appellants to pay the sum of $5,000 at any time and get a deed. The language the parties chose is to the effect that when the appellants "have paid the sum of Five Thousand ($5,000.00) Dollars on account of the principal sum due hereunder, then, and in that event, the sellers agree to execute a deed covering the aforesaid property and to take back a purchase money mortgage for the unpaid balance * * *." The appellants complain that the chancellor gave great weight to the phrase "due hereunder", but we think that he was correct in so doing. What is "due hereunder" is, of course, the $65 per month, and nowhere can we read an option to pay an additional $5,000. Besides the language "in that event," obviously referring to the attainment of $5,000 paid on the principal by application of $65 per month, there is the language of the prior phrase quoted *supra*, restricting prepayment of the amount due. Thus the lower court was correct in construing the whole clause to mean that when $5,000 has been paid in the ordinary course of amortization the deed shall be executed by the seller.

There was some argument advanced by the appellants that the practical effect of the contract was to impose an unreasonable restraint upon alienation. But, as the contract was construed that argument is not tenable. It may take thirty-seven more years to acquire an unencumbered title in the appellants, but it can be done if they will exercise the option given them by the decree, namely, to pay the real estate taxes and fire insurance premiums over and above the $65 monthly payments, so that this amount can be applied to principal and interest.

We do not think the situation here calls for a result which would defeat valuable contractual rights of the seller. It is reasonable to assume that the seller desired to collect 4% interest on the unpaid balance and should not be compelled to take a lump sum payment which would deprive him or his estate of that right. *Meinecke v. Goedeke,* 195 Md. 373, 73 A. 2d 445,

Indeed, since the appellee is a trustee for the estate of the deceased seller, to accede to the appellants' demands might well be a breach of his fiduciary duty.

In that regard, what we said in *Abell v. Safe Deposit & Trust Co.,* 192 Md. 438, 64 A. 2d 722, is applicable here. It would unduly prolong this opinion to set forth the lengthy and somewhat detailed facts surrounding that appeal in a bondholders' suit against the trustee under a mortgage indenture and the issuing corporation. Concerning the point here involved it is sufficient to say we recognized, that where a mortgage indenture securing the payment of corporation bonds provided for redemption of only a certain number of them each year in the order of their serial numbers, and in no other way, this conferred a valuable right on the bondholders, and to redeem them in any other way was a violation of the contract by the corporation and a breach of trust by the trustee.

Finding no error in the decree of the lower court we must affirm.

*Decree affirmed. The costs to be paid by the appellants.*