JOHN F. CONNOLLEY, JR. *v.* HALE
HARRISON ET AL.

[No. 178, September Term, 1974.]

*Decided November 20, 1974.*

The cause was argued before THOMPSON, POWERS and
GILBERT, JJ.

*Benjamin Lipsitz,* with whom was *Eleanor Jean Lipsitz* on
the brief, for appellant.

*Karl G. Feissner,* with whom were *Theodore R.*

*Eschenburg, Thomas P. Smith* and *Feissner, Kaplan, Smith, Joseph, Greenwald & Laake* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

John F. Connolley, Jr., appellant, the contract purchaser of a parcel of land in Ocean City, Maryland, filed a bill of complaint in the Circuit Court for Worcester County to compel specific performance. The contract, dated May 15, 1971, was entered into between him and the Harrisons, the sellers. Connolley also asked the court for a declaratory judgment declaring that a deed of trust executed between the Harrisons' grantor (appellee-Royer) and the Harrisons created an invalid restraint on alienation. The trial judge, Judge Daniel T. Prettyman, denied specific performance and found that no invalid restraint on alienation existed in the deed of trust from the appellee-Royer to appellees-Harrisons.

## FACTS

On August 8, 1970, Eva Lee Royer, Hale Harrison, Helen Harrison Faucette and John Henry Harrison (all appellees in the instant case) entered into an agreement whereby Royer agreed to sell certain property in Ocean City, Maryland, to the Harrisons in fee simple. The purchase price was $100,000.00. The Harrisons made a down payment of $20,000.00 and on November 12, 1970, executed an $80,000.00 promissory note, with interest at 7% per year, and a deed of trust on the land as security for the balance of the total purchase price. All three of these documents were recorded in the land records of Worcester County. Each contained or incorporated documents that did contain the following clause from the sales contract:

> "The Buyer shall have the right to prepay the aforesaid Note after two (2) years from the date of said Note, but as a condition thereof, the Buyer and Guarantors shall pay to the Seller all interest which would be due on said Note had it run its full term. The Buyer shall have the right after two (2)

years from the date of said Note to sell the subject property without the consent of the Seller. Any subsequent purchaser, however, shall be bound by all the terms of this contract so long as the Seller's Note remains unpaid in any part. The Buyer's purchaser or purchasers may then assume said Note as additional obligors and take the property subject to said Deed of Trust and payment of said Note shall not be accelerated for reason of said sale."

On May 15, 1971, the Harrisons and the appellant entered into a conditional sales contract whereby the Harrisons agreed to sell to the appellant a portion of the aforementioned property. The total purchase price was $110,000.00. The viability of this contract was made subject to three distinct conditions being met, but we are concerned with only one:

"This contract is subject to the sellers obtaining a satisfactory release and settlement of the present outstanding mortgage against the property."

Settlement was to take place on or before August 13, 1971. Just prior to that date the Harrisons' agent, George Purnell, informed appellant that they would not go through with settlement because they could not "get out of the mortgage." The Harrisons failed to appear at the time and place designated for settlement. Connolley attended, with funds sufficient to consummate the transaction and was ready, willing and able to settle.

## RESTRAINT ON ALIENATION

Appellant contends that the trial court erred in finding that the above quoted language in the deed of trust from Royer to the Harrisons did not create an invalid restraint on alienation. Assuming, without deciding, that the sentence, "The Buyer shall have the right after two (2) years from the date of said Note to sell the subject property without the consent of the Seller" creates an invalid restraint on

alienation, it can be severed from the instrument without destroying the instrument's overall validity or the validity of any other provisions if it is not so interwoven as to be logically inseparable from the rest. *Northwest Real Estate Co. v. Serio*, 156 Md. 229, 232, 144 A. 245 (1929); *Jones et al. v. Northwest Real Estate Co.*, 149 Md. 271, 279, 131 A. 446 (1925). *See also Baldwin v. Grymes*, 232 Md. 470, 473, 194 A. 2d 285 (1963); *Nicholson v. Ellis*, 110 Md. 322, 333, 73 A. 17 (1909). In the instant case we find that the clause prohibiting for two years the sale of the property by the Harrisons without Royer's approval is severable from the clause which prevents prepayment or anticipation of the note for two years and from the clause which accelerates the amount due under the note if the note is prepaid. The latter two clauses, unlike the first, are not intended to prevent the sale of the property. They are intended to protect the grantor's investment, to insure her a maximum return and perhaps to take advantage of favorable income tax treatment.

Severing this language narrows our inquiry to a determination of the validity of the first sentence of the above quoted language which in effect prevents the Harrisons from prepaying or "anticipating" the deed of trust for the first two years of its existence and which provides for acceleration of the amount due if prepayment is eventually made.

In *Pierson v. Pyles*, 234 Md. 119, 197 A. 2d 890 (1964), the Court of Appeals upheld a clause in a land sale contract which prevented anticipation of monthly payments against a claim that the clause imposed a restraint on alienation. In *Pierson*, the sale contract provided for a total purchase price of $15,000.00, payable $65.00 monthly with 4% interest imposed on the unpaid balance. The contract specifically denied the contract purchasers the right to anticipate the monthly payments. Under the contract the purchasers were also required to pay all taxes and insurance premiums. These payments were to be paid by the sellers from the monthly installments. The contract further provided that the purchasers were not to receive a deed for the property unless and until they reduced the principal by $5,000.00 by

means of the $65.00 monthly payments. If and when the principal was so reduced, the sellers were required to take back a mortgage on the remainder of the debt. At the time of the contract, June 13, 1946, assuming the taxes had remained constant, it would have taken the purchasers $27^3/_4$ years to reduce the principal by the required $5,000.00 and thus obtain a deed. Taxes, however, did not remain constant. They rose substantially after 1946 with the result that in 1962 when the purchasers instituted suit for declaratory relief, the unpaid balance due was $15,222.44 or $222.44 more than it was 16 years earlier.

The Court of Appeals construed the contract to permit the purchasers to pay the insurance premiums and taxes over $65.00 but held the $5,000.00 reduction in principal still must be paid from the monthly payments. The Court stated:

> "There was some argument advanced by the appellants that the practical effect of the contract was to impose an unreasonable restraint upon alienation. But, as the contract was construed that argument is not tenable. It may take thirty-seven more years to acquire an unencumbered title in the appellants, but it can be done if they will exercise the option given them by the decree, namely, to pay the real estate taxes and fire insurance premiums over and above the $65 monthly payments, so that this amount can be applied to principal and interest.

> "We do not think the situation here calls for a result which would defeat valuable contractual rights of the seller. It is reasonable to assume that the seller desired to collect 4% interest on the unpaid balance and should not be compelled to take a lump sum payment which would deprive him or his estate of that right. *Meinecke v. Goedeke,* 195 Md. 373, 73 A. 2d 445." *Id.* at 124.

The Court further added:

> "In that regard, what we said in *Abell v. Safe*

*Deposit & Trust Co.*, 192 Md. 438, 64 A. 2d 722, is applicable here. It would unduly prolong this opinion to set forth the lengthy and somewhat detailed facts surrounding that appeal in a bondholders' suit against the trustee under a mortgage indenture and the issuing corporation. Concerning the point here involved it is sufficient to say we recognized, that where a mortgage indenture securing the payment of corporation bonds provided for redemption of only a certain number of them each year in the order of their serial numbers, and in no other way, this conferred a valuable right on the bondholders, and to redeem them in any other way was a violation of the contract by the corporation and a breach of trust by the trustee." *Id.* at 125.

We hold that *Pierson v. Pyles, supra,* is controlling on the issue of the lack of the right to anticipate and we thus hold that said lack did not create an invalid restraint on alienation.[1]

Appellant relies exclusively on *Northwest Real Estate Co. v. Serio, supra,* to support his contention. His reliance is misplaced. In *Serio,* a deed in fee simple contained, in addition to various building and use restrictions, a provision that the land should not be sold or rented for a period of approximately five years without the consent of the grantor, This provision was found to be void as a restraint on alienation and was severed from the deed. It is immediately apparent that *Serio* is distinguishable from the instant case. Here, unlike in *Serio,* the clause preventing anticipation for two years and the clause accelerating payment of interest in case of prepayment in no way prevents the alienation of the fee. In short, neither of the clauses just mentioned violated the purpose for the rule against invalid restraints on alienation, i.e.: neither clause made the property *"extra*

---

1. There is no contention that the usuary statutes apply. *See* Md. Code, Art. 49, § 7, exempting commercial property.

*commercium." Commonwealth Realty Corporation, et al. v. Bowers et al.,* 261 Md. 285, 297, 274 A. 2d 353 (1971).

The question of the propriety of the clause in the Royer deed of trust which required that in the event the note was paid prior to maturity all interest would be due as if the note had run its full term was dealt with succinctly and cogently by the trial court:

> "The Court is of the opinion, and does specifically so find, that the penalty imposed, by way of the requirement for the payment of interest for the full term of the mortgage, is not an invalid restraint on the alienation of the estate transferred. That provision created and conferred upon the lender, Eva Lee Royer, a valuable contractual right of which she should not, and cannot, be deprived. The Agreement of Sale, dated August 8, 1970, the Deed of Trust, dated November 12, 1970, and the Deed, of the same date, assured unto her not only security to her satisfaction for the payment of the remainder of the purchase price of the property, but assured unto her an income in such a manner as she desired the same, and which she, at least, believed to be in her best interest. Agreeable, as it was, to the **buyers, obligors, guarantors and transferees,** it constitutes a contractual obligation with which the Court should not, and cannot, tamper."

*See Pierson v. Pyles, supra* at 124.

We agree completely with the trial court and thus hold that the "penalty" clause in the Royer Deed of trust did not impose an invalid restraint on alienation.

## SPECIFIC PERFORMANCE

The sale contract between Connolley and the Harrisons was made subject to three conditions precedent, but as we stated above we are concerned only with the condition expressed in the following language:

> "This contract is subject to the sellers obtaining a

satisfactory release and settlement of the present outstanding mortgage against the property."

The trial court, in discussing appellant's specific performance complaint, found that the above quoted language was inserted in the contract for the benefit of the sellers (appellees-Harrisons), that the term "satisfactory release" meant satisfactory to the sellers, that no satisfactory release was available to the sellers and that the appellant had failed to prove that the sellers had not been diligent in an attempt to get a release of the mortgage.

We find, as did the trial court, that the term "satisfactory release" in the sale contract meant satisfactory to the sellers. Appellant argues that the term was for the benefit of both parties. His argument is not sound in light of the remainder of the contract and the circumstances surrounding the insertion of the disputed phrase.

An examination of the contract shows that it consisted of a single page with printing on both sides. The release provision is contained on the second side. On the front side among the pre-printed sections there is language which guarantees that the seller "shall convey the property by a good and merchantable title to the buyer, *free of liens and encumbrances* except as specified herein; . . ." (Emphasis added). The appellant-buyer was by this language protected from receiving the property still encumbered by a mortgage. It clearly follows that the "satisfactory release" provision must have been inserted to protect the sellers and that therefore the term satisfactory meant satisfactory to them. A review of the circumstances surrounding the insertion of the release clause also lends weight to this conclusion. In this regard the trial judge stated:

"It is important to remember that the negotiations surrounding the actual preparation of the Agreement of Sale, on May 15, 1971, were extended and intensive. They lasted for six hours, from three o'clock P.M. to nine o'clock P.M., with Hale Harrison in attendance for about two hours. The first (or front) page of the Agreement was prepared

by the Agent for the Purchaser-Plaintiff, with the exception of the names of the 'Sellers'. The second (or back) page was the subject of discussion and consideration, being finally prepared by Mr. Purnell, but executed by all parties, as can be seen from Plaintiff's Exhibit No. 1. The encumbrance upon the property (referred to in the Record as a 'Mortgage') was discussed by all parties and was first made the subject of discussion by either Mr. Harrison or Mr. Purnell (more likely, Mr. Harrison) and not by Mr. Connolley, with the provision with respect thereto being specifically at the request of the Sellers.

"In view of these facts, the Court can only construe the meaning of the word "satisfactory" as being satisfactory to the Sellers. Such a unilateral agreement is, of course, valid and enforceable. Devoine vs. International Company, 151 Md. 690, and Compania De Astral vs. Boston Metals Co., 205 Md. 237, at pages 265-272."

Our holding that the release provision was inserted for the protection and benefit of the appellee-sellers, of course, does not end our inquiry. In order to obtain specific performance in conditional contract situations, the complainant must show that: (1) the conditions precedent have been met; (2) they have been waived by the party who would benefit from them; or (3) there has been a lack of a bona fide effort to comply. *Jones v. Saah,* 261 Md. 340, 344, 275 A. 2d 165 (1971); *Metz v. Heflin,* 235 Md. 550, 552-553, 201 A. 2d 802 (1964); *Diffenderffer v. Kleiman,* 232 Md. 575, 577, 194 A. 2d 635 (1963); *Griffith v. Scheungrab,* 219 Md. 27, 35, 146 A. 2d 864 (1958).

There is no evidence that the sellers waived the condition that they obtain a satisfactory release of the mortgage from Royer.

The availability of a satisfactory release of the mortgage and the attempts made to procure same by the Harrisons was dealt with thoroughly by the trial court:

"On August 2nd, Mr. Cronin (the Agent for Mr. Connolley) was advised by Mr. Purnell [Agent for the Harrisons] that a release of the encumbrance had not yet been obtained, whereupon Mr. Cronin talked with Miss Royer on the telephone, and was referred to Mr. Feissner. On August 11th, Mr. Purnell again advised Mr. Connolley and Mr. Cronin that it was impossible to get a release of the 'mortgage'. On August 9th or 10th, Mr. Connolley and Mr. Cronin were advised by Mr. Hale Harrison and Mr. John Harrison that they could not obtain a release of the 'mortgage'. * * *

"One must look now, therefore, to the evidence presented as to the efforts made by the Sellers to obtain the 'satisfactory release and settlement'. At a time subsequent to August 11, 1971, apparently 'sometime in October', Mr. Cronin spoke with Mr. Feissner on the telephone, and, according to Mr. Cronin, was informed by Mr. Feissner that there had been no contact with him with regard to obtaining such a release or settlement, and that the Sellers would have had 'to come through him'. Although the date is not clear, assuming that it was on August 3rd or 4th, Mr. Cronin attempted to contact Mr. Feissner on the telephone, but found that he was '. . . in Spain, or he was out of the Country', and would not return until after Labor Day, with his Associate, a Mr. Douglas, knowing nothing about the case. Incidentally, Mr. Feissner denied that he had ever been in Spain. At any rate, still after the expiration of the time limited in the Agreement of Sale, Mr. Cronin apparently had a conversation with Mr. Feissner 'on or about November 11' and wrote a letter on November 24, 1971, to which he received no reply [Plaintiff's Exhibit No. 11]. The only other evidence was that contained in a conversation with Mr. Webb St. Claire 'between the first and second hearing on this case', in which Mr. St. Claire stated that he had not

been contacted by the Sellers with regard to this matter, 'and if he did he would have refused to release the mortgage'.

"This constituted the entire evidence presented upon this allegation in the Amended Bill of Complaint. Miss Royer was in Court, available to testify, throughout the trial, as was Mr. St. Claire, but neither were called by the Plaintiff to testify. Whether the affidavits filed by Mr. St. Claire and Mr. Hale Harrison on March 29, 1972 influenced this decision is not known to the Court. Mr. Hale Harrison and Mr. John Harrison were both in Court during the said trial, but were, likewise, not called to the Stand by the Plaintiff."

We agree with the trial judge that, considering the evidence in the light most favorable to the complainant (appellant) as we are required to do under Md. Rule 535, nevertheless appellant failed to establish that the Harrisons did not in good faith attempt to get a satisfactory release of the mortgage from Royer.

The appellant argues that the failure of the Harrisons to tender all principal and interest due under the deed of trust to Royer in effect estopped them from claiming the failure of the condition precedent as a defense. This argument overlooks two things. First, since we have held earlier in this opinion that the clause in the Royer deed of trust which prevented prepayment for two years was valid, Royer was free to refuse any offer to prepay the total amount. In fact, there was evidence that Royer's agent stated that no release would be given. This is also borne out by Royer's affidavit filed prior to trial. Second, the appellant overlooks the fact that, even had Royer consented to prepayment, the amount due from the Harrisons on the note would have been greater than the purchase price to be received by the Harrisons from Connolley. It can scarcely be said that such a situation would qualify as a "satisfactory release" for the Harrisons.

We, therefore, hold that since a condition precedent to the existence of the contract between appellant and the

496

Harrisons was not met, appellant was not entitled to specific performance.

*Order affirmed.*
*Appellant to pay costs.*