1819.

Adams
vs
Anderson

DECEMBER.

ADAMS vs. ANDERSON.

A carried N to B, and passed him off to B for a friend of his residing in W, (a few miles distant,) and thereby induced B to sell to them certain slaves for a less price than they were worth, with an understanding that they were to be kept by A and N in the neighborhood; whereas the slaves were intended for N, who was a dealer in slaves, and who removed those so purchased of B out of the state into the state of South Carolina. In an action brought by B against A to recover damages for the fraud and deceit—Held, that the objection that the agreement is a special verbal promise to answer for the default of another person, and void under the statute of frauds, could not be sustained: but that it was a cheat and fraud on the part of A for which B was entitled to damages.

APPEAL from *Montgomery* County Court. This was a special action on the case to recover damages, for fraud, deceit and misrepresentation, whereby the plaintiff, (now appellee,) was induced to sell certain slaves for a less price than they were worth. The defendant, (the appellant,) pleaded not guilty. At the trial the plaintiff offered evidence to prove, that some time in the spring of 1816, the defendant came to his house, bringing with him a stranger, (who he afterwards understood was named *Nixon*,) and the defendant applied to the plaintiff to know if he had not a negro woman to sell, stating that he wished to purchase. The plaintiff then asked the defendant if he wanted the woman for his own use, (the defendant being proved to be living at *Montgomery* court-house, and about a mile from the plaintiff's residence,) the defendant replied that he did. Upon seeing a woman, the defendant asked the price, and the plaintiff said $300, which the defendant said he thought too high. The plaintiff then said he had another, with a child about six years old, which he would show him, and would sell for $400. Upon seeing them the defendant asked if he would sell them all three, and what would be his price. The plaintiff replied $700, and upon the defendant's objecting to the price, the plaintiff said as the defendant would take them for his own use, and the negroes were willing to go with him for that purpose, (the negroes having expressed their willingness,) he would sell them lower on that account, and would take $675. The defendant then said that the person present was a friend of his, residing in *Washington* city, and wanted one of them for his own use, and that he would take one, and himself the other, (as he wanted but one,) at that price. That *Nixon* then offered to give his bond, obliging himself to keep the woman for his own use, and from being removed from the city of *Washington*, where he lived. The plaintiff replied that a bond was not necessary, but that if the defendant would be responsible, and engage to that effect, he would be satisfied.

That he abhorred the practice of selling to slave-dealers, and would not so sell the negroes for any consideration, nor dispose of them except with the understanding that they were to be kept in the neighbourhood. The defendant then declared that he did so engage, and that he would keep the one, and *Nixon* the others. Upon this the bargain was made, the money paid, and the negroes delivered to the defendant the next morning. The plaintiff then proved that this *Nixon* was at this time a slave-dealer from *South Carolina*, where he resided, and was known to the defendant to be so. That upon the delivery of the negroes to the defendant, they were all immediately carried off out of the state by *Nixon*, and removed to *Carolina*. He further proved, that shortly afterwards the defendant acknowledged that he had carried *Nixon* to the plaintiff, and passed him off on the plaintiff for a friend of his in *Washington*, and had induced the plaintiff to sell the said negroes to him, under the understanding that they were to be kept by him and *Nixon* in the neighbourhood, and boasted of the manner he had managed the affair for *Nixon*, whose agent he was, and from whom he had received $40 for his agency; that when they saw the negroes, *Nixon* fixed a price on them, and told the defendant that he might get them as much lower as he could, and he would allow him the difference. It was further proved by the plaintiff that these negroes, (one of them about 16 and the other 20 years old,) were born and raised in his family, and one of them had a father and mother belonging to him, and then in his service. And the plaintiff further proved, that a few days after the sale he called on the defendant, and reproaching him for his conduct, said he would return the money, and demanded the negroes, which the defendant said the plaintiff might get, but they had been then removed from the city of *Washington*. That the father and mother of the girl so sold, when they heard she had been carried off, were in great distress and trouble, and for sometime unable to do their usual work in the plaintiff's service, though they were not confined by sickness. On this evidence the defendant prayed the court to instruct the jury, that the plaintiff was not entitled to recover. But the Court, [*Ridgely*, A. J.] refused to give the instruction. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, EARLE, JOHNSON, and DORSEY, J. by

*Boyle*, for the Appellant; and by
*Magruder*, for the Appellee.

BUCHANAN, J. delivered the opinion of the court. It is objected that the agreement in this case is a special verbal promise to answer for the default of another person, and void under the statute of frauds. In the opinion of the

court it is clearly not such an undertaking, but is a palpable cheat and fraud on the part of the appellant, for which the appellee is entitled to damages.

**JUDGMENT AFFIRMED.**