# David Steuart *vs.* Elijah Williams.

A testatrix devised to her grandson the children of her slave Esther, but added, that they should " be free and emancipated from slavery at twenty-eight years of age, *provided they be sold.*" Held :

That this was a conditional limitation of freedom, which it was competent for the testatrix to make, and was not a restraint upon alienation inconsistent with the right of the legatee to the property, and that it took effect as soon as the slaves were sold and attained the age prescribed.

A witness may be impeached by direct evidence as to his character for truth, or by evidence of *his* acts or declarations, inconsistent with his testimony at the time, but not by the acts of a *third party*, of which he is not shown to have been either aware or to have sanctioned.

In a petition for freedom the petitioner offered in evidence the will under which he claimed his freedom, and the defendant proved that the testatrix, long before the execution of the will, gave and delivered the petitioner's mother to the witness as a slave for life, and that whilst the mother was so

54    v. 3

held in slavery by witness the petitioner was born, and was afterwards sold to defendant. HELD :

That it was error to admit the will, inventory and administration account, disposing of and treating the petitioner as part of the estate of the testatrix, for the purpose of *impeaching* this witness, there being nothing to show that he had any knowledge of the contents of the will when executed, or authorised or sanctioned the correctness of the inventory or accounts.

The gift of a negro accompanied by delivery is just as effective as if evidenced by a bill of sale, and can only be impeached by showing fraud or the falsity of the witness who proves it.

A prayer that the petitioner was entitled to his freedom, if the jury find that he was the son of Esther, mentioned in the will of the testatrix, and was sold to defendant, and was at the time of filing his petition twenty-eight years old, is defective, because it takes from the jury the finding of the fact whether Esther was the slave of the testatrix.

APPEAL from Baltimore city court.

This was a petition for freedom, filed by the appellee against the appellant, and the issue tried was freedom *vel non*.

*Exception.* The petitioner offered in evidence the will of Catharine Belt, executed in 1825, containing, among others, this clause: "I give and bequeath my negro woman *Esther* to my son, George Gordon Belt, for and during the natural life of my son, Thomas Hanson Belt, and the children of the said *Esther* now born, or that may hereafter be born of the said *Esther*, in trust, for the sole use and benefit of my said son, Thomas Hanson Belt, and upon his death, if the children of the said *Esther* shall then be alive, I give and bequeath them as follows, viz: I give and bequeath to my grandson, Thomas Hanson Belt, *Elijah*, son of the said *Esther*." Also a codicil executed in the same year, in which the testatrix, after referring to the devise in her will of the negroes to her children, directed, "that none of them shall be sold out of the State of Maryland, and I do hereby order and direct, that if any of them should be sold in the State of Maryland, that they shall serve for a term of years, as I hereby direct, viz: the children of my woman *Esther*," &c., "already born, as specified in my said will, or that may hereafter be born, shall be free and emancipated from slavery at twenty-eight years of age, provided they be sold." He then proved that the

slave therein called *Elijah* was the petitioner himself, and that since the death of the testatrix, Thomas Hanson Belt had sold him to the defendant as a slave for life, and that he was, when he filed his petition, over twenty-eight years old.

The defendant then on his part, having first executed a release to the said T. H. Belt, proved by him, that his mother, the said Catharine Belt, in her lifetime, about the year 1812, gave to him a family of negroes, among whom the said *Esther* was one, and that ever since she has resided with him, in his house and under his control as her master, and has been used and employed by him as his slave; that in the year 1822 or 1824, the petitioner was born of the said *Esther* in his house, and was exclusively maintained and supported by him, and used and treated as his slave under the gift aforesaid, until he was sold to the defendant.

The petitioner then, with the object and for the limited purpose of impeaching and contradicting the statement of said T. H. Belt, gave in evidence the said will; also the inventory of the estate of said testatrix, in which the petitioner, then nine years old, was appraised as a slave for life at $160; also the administration account of said George G. Belt, in which he claims an allowance for the petitioner, as devised to him in trust for said T. H. Belt, subject to the provisions of the will.

To the admissibility of each of these papers for the purpose for which they were offered the defendant objected, which objection the court overruled. The petitioner then asked the instruction set out in full in the opinion of this court, and the defendant also asked an instruction, which, (being granted,) it is unnecessary to state. The court, (NESBITT, A. J.,) granted both instructions, and defendant excepted to the granting of the petitioner's prayer, and to the admission of the will, inventory and account, for the purpose for which they were offered. The verdict and judgment were in favor of the petitioner, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, MASON and TUCK, J.

*Grafton L. Dulany* for the appellant.

1st. The condition annexed by the will to the absolute devise of the slave for life, that he should be free if sold, was repugnant and void. 4 *Kent's Com.*, 130, 131. 2 *Caine's Rep.*, 345, 352. 4 *Simons*, 141. 10 *Coke's Rep.*, 35, *Mary Portington's case.* 6 *Coke's Rep.*, 40, *Lord Mildmay's case.* See also the case of *Holliday vs. Negro Emily Ann*, decided by the Court of Appeals for the eastern shore at November term 1840, and not reported.

2nd. There is no such sale of the petitioner proved in the case at any time, as would, under the true construction of the will of Mrs. Belt, entitle him to his freedom. The sale as proved was made by the *cestui que trust* for life, and without the concurrence of the trustee or the remainder man, whose interest could not be defeated by the alienation of the tenant for life.

3rd. There was error in permitting the will of Mrs. Belt, the inventory and administration accounts of G. G. Belt, to be given in evidence to impeach the credit of T. H. Belt, who was in no way connected with either of these papers. 2 *H. & J.*, 402. 1 *Starkie's Ev.*, 145.

*John H. B. Latrobe* for the appellee.

The questions are:—1st, was the slave held under the will or under the alleged gift to T. H. Belt? 2nd, is the condition annexed to the devise valid? and 3rd, has there been such a breach of this condition as to entitle the slave to his freedom?

1st. The first question is one *of fact*, and was submitted to the jury, and they have passed upon it. A witness may be impeached by acts done or said inconsistent with the facts to which he testifies. 1 *Starkie's Ev.*, 145. Here the party standing by and permitting his mother to dispose of the slave by will, his silence is an admission of the mother's title. He also stood by and saw the administrator return and account for the slave as a part of the mother's estate. Surely this was evidence proper to go to the jury, and their finding is conclusive that the slave was held under the will.

2nd. That the condition was valid is conclusively estab-lished by the decision of the Supreme Court, in the case of *Williams vs. Ash,* 1 *Howard,* 1. See also 9 *Peters,* 364.

3rd. That there was a sale and therefore a breach of the condition, is fully established by the testimony of Belt, offered by the appellant himself.

LE GRAND, C. J., delivered the opinion of this court.

This was a petition for freedom. The appellee, who was the petitioner below, claimed his freedom under the will of Mrs. Catharine Belt. By that instrument it is provided, that the children of her slave Esther, who was the mother of the petitioner, should be entitled to their freedom at the age of twenty-eight years; *provided they should be sold by the legatee of the testator.*

It appears from the evidence that the petitioner was sold to the appellant as a slave for life, and that he was upwards of twenty-eight years of age at the time of the filing of his petition. The case of *Williams vs. Ash,* 1 *Howard,* 1, es-tablishes, that it is competent for a testator in Maryland, to manumit a slave on the happening of a contingency. In that case, the testatrix bequeathed to her nephew certain slaves, with the following proviso in her will, "that he should not carry them out of the State of Maryland, or sell them to any one; in either of which events, I will and desire the said negroes shall be free for life." It was held by the court that the bequest, under the restrictions imposed by the will, was not a restraint on alienation inconsistent with the right to the property bequeathed to the legatee; that it was a conditional limitation of freedom, and took effect the moment the negro was sold.

If, then, there were no other facts proved in the case be-fore us than the will and ownership of Mrs. Belt, the age and sale of the petitioner, he would be clearly entitled to his free-dom. But the appellant does not claim under the will of Mrs. Belt, but in opposition to it. It was proved by Thomas H. Belt, that long before the execution of the will of Mrs.

Belt, the mother was given and delivered to him, and that whilst she was held by him in slavery, the petitioner was born. To rebut this evidence and to *impeach* the witness, the will of Mrs. Belt, the inventory of her personal estate and adminis- tration accounts were given in evidence. In admitting this evidence and, consequently, in granting the prayer founded on it, the court erred. There is nothing in the case to show, that the witness had any knowledge of the contents of the will at the time of its execution, nor is there any evidence from which it could be properly inferred, he authorised or sanctioned the correctness of the inventory of the personal estate of his mother, or of the accounts of the administrator.

If the evidence of the witness, Belt, was believed by the jury, the petitioner was not entitled to his freedom, and this evidence was not sought to be impeached in the mode pointed out by the law of evidence. His character for truth should have been assailed by evidence directly to that point, or evi- dence should have been given of *his* acts or declarations in- consistent with his testimony at the trial. 1 *Starkie's Ev.*, 210. Nothing of this kind was attempted. The petitioner relied entirely on the acts of a third party, without under- taking to show the witness, in any manner or degree, was either aware of or sanctioned them.

It frequently happens, that evidence is introduced into a cause which is properly admissible at the time it is offered, but which, as the case progresses, proves to be of no legal efficacy. It was undoubtedly competent for the petitioner to lay the foundation of his claim to freedom, by offering in evidence the will of Mrs. Belt; but this will could avail him nothing if the witness, Belt, was believed, because he claimed in opposition to Mrs. Belt's will. Had she executed a bill of sale of Esther, and had it been recorded, it is clear any sub- sequent declarations of her's, whether by last will or other- wise, would have been incompetent to impeach his title. Now a gift of a negro, like the gift of any other personal chattel, when accompanied by delivery, is just as effective as though it were evidenced by a bill of sale, and can only be

impeached according to the known principles of the law of evidence; either by showing fraud, or the falsity of the witness who proves it. This has not been attempted. Had the administrator of Mrs. Belt brought an action of trover against the defendant, and the witness proved the gift and delivery to him, and the sale by him to the defendant, as he has in this case, undoubtedly the title of the defendant could not have been defeated by the acts or declarations of Mrs. Belt or of her administrator.

But in addition to this, the prayer asked on behalf of the petitioner was erroneous for another reason: It asks the court "to instruct the jury, that if they should find the petitioner was the son of Esther, mentioned in the will of Mrs. Belt, and was sold to the defendant, and was of the full age of twenty-eight years at the time of filing his petition, then their verdict must be for the petitioner, unless they should also find the gift as testified to by the witness Belt."

All the facts stated in the prayer might have been found by the jury, and yet it would not, therefore, have followed that the petitioner was entitled to his freedom. The prayer was defective in this:—it took away from the jury the finding of the fact, whether Esther was the slave of Mrs. Belt. Unless she was the slave of Mrs. Belt, nothing she could say in her will could give the issue freedom, and this was a fact to be found by the jury, and not to be pronounced by the court as a conclusion of law. *Ellicott vs. Brown*, 2 *Md. Rep.*, 75, and the cases there referred to.

*Judgment reversed and procedendo awarded.*