NORTHWEST REAL ESTATE COMPANY *v.* CHARLES SERIO ET AL.

CHARLES SERIO ET AL. *v.* NORTHWEST REAL ESTATE COMPANY ET AL.

[Nos. 49-51, October Term, 1928.]

230

*Decided January 15th, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Walter C. Mylander,* with whom was *Nathan Patz* on the brief, for the Northwest Real Estate Company.

*William M. Maloy,* with whom were *Maloy, Brady & Yost* on the brief, for Charles Serio and wife.

*J. A. D. Penniman,* with whom were *Heimiller & Penniman* on the brief, for Carl W. Einbrod and wife.

URNER, J., delivered the opinion of the Court.

A deed in fee simple for a lot of ground contained, in addition to various building and use restrictions, a provision that the land should not be subsequently sold or rented, prior to a designated date, without the consent of the grantor. The decisive question in this case is whether the restraint thus sought to be imposed upon the alienation of the property is void as being repugnant to the granted estate.

The covenant to be considered is in the habendum clause of a deed dated August 19th, 1927, from the Northwest Real Estate Company to Carl M. Einbrod and wife, conveying a building lot in Ashburton, a suburb of Baltimore City, and is in the following form: "7. And for the purpose of maintaining the property hereby conveyed and the surrounding property as a desirable high class residential section for themselves their successors heirs executors administrators and assigns that until January 1st, 1932, no owner of the land hereby conveyed shall have the right to sell or rent the same without the written consent of the grantor herein which shall have the right to pass upon the character desirability and other qualifications of the proposed purchaser or occupant of the property until January 1st, 1932, and the said grantor further agrees that all deeds or leases hereinafter made by it of the remaining unimproved lots on the plat of Ashburton Section 6 heretofore referred to shall contain the same covenant as to the sale or renting of such property."

On March 27th, 1928, the grantees contracted in writing to sell the lot to Charles Serio and wife, and, upon payment of the purchase price, to convey the property to them, "by a good

and merchantable title," "subject however to the residential restrictions prevailing in Ashburton." The Northwest Real Estate Company declined to give its consent to the sale and transfer for which the contract provided. The purchaser then brought this suit against the vendors and the company to compel the specific performance of the agreement without the consent of the company, on the theory that the quoted covenant is void, or with the judicially enforced consent of the company, if the covenant should be held to be valid, the averment being made in the bill of complaint that the company's refusal to consent was arbitrary and unreasonable. The vendors in their answer stated their willingness to perform the contract of sale, but asserted that a compliance with its terms was not contingent upon the consent of the Northwest Real Estate Company, since the contract provided that the property was to be conveyed subject to the existing "residential restrictions." That position was not tenable, because the right of the vendors to make the sale was involved in the restriction which is the occasion of this suit. In its answer the company admitted and explained its refusal to consent to a sale or transfer of the property to the plaintiffs, and defended the covenant in controversy as a valid and reasonable provision. A demurrer to the bill was embodied in the company's answer, and it in turn was challenged by a demurrer which the plaintiffs filed. After a hearing on the questions thus raised, the demurrer to the bill was overruled, and the demurrer to the answer was sustained, with leave to file an amended answer within five days. The company did not avail itself of that privilege, but appealed from the order overruling its demurrer to the bill of complaint. No appeal bond being filed, the case was brought to a final hearing, which resulted in a decree declaring the disputed covenant to be void and directing a specific performance of the contract of sale, upon payment of the purchase money, by a conveyance of the property subject to all of the prescribed restrictions except the one declared to be inoperative. From the decree a further appeal was entered by the Northwest Real Estate Company. The purchaser also appealed, upon the theory that

such action might be a proper precaution in view of the pendency of the company's appeal from the decision on the demurrer.

The objections, urged on demurrer, that the bill is multifarious and that there was a misjoinder of parties, are not sustainable. It was an essential purpose of the specific performance suit to remove the obstacle to the plaintiff's purchase presented by the assertion of a right on the part of the original grantor to prevent subsequent sales and conveyances, by refusal of consent, during the specified period. The fact that relief was sought by the alternative means of the invalidation or the judicial control of the covenanted right did not render the bill multifarious, and the grantor corporation was properly joined as a defendant in a suit by which its interests were thus affected.

The final decree of the circuit court is in accordance with the policy of the law in this state with respect to provisions in restraint of alienation. In *Clark v. Clark,* 99 Md. 356, where this court had under construction a will which, after a devise of an absolute estate to the seven children of the testator, provided that the property should not be sold within ten years for partition purposes without their unanimous consent, it was said in the opinion: "This provision of the will if effective would practically amount to a restraint for ten years of all alienation by any child of its share of the estate. We have no difficulty in arriving at the conclusion that this attempted imposition of restrictions upon the method of alienation and enjoyment of the absolute estate given to the testatrix' children was contrary to the policy of the law and therefore inoperative and void. The authorities agree that conditions or limitations in restraint of alienation or essential enjoyment of an estate in fee cannot be validly annexed to the deed or devise by which the estate is created, because they are repugnant to the inherent nature and qualities of the estate granted and tend to public inconvenience. 4 *Kent's Com.,* 143-4; *Vin. Ab.,* p. 103; *Gray's Restraints upon Alienation,* par. 47 to 54; *Stansbury v. Hubner,* 73 Md. 231; *Warner v. Rice,* 66 Md. 440; *Downes v. Long,* 79

Md. 390; *Blackshere v. Samuel Ready School,* 94 Md. 777; *Mandelbaum v. McDonnell,* 29 Mich. 78; *Potter v. Couch,* 141 U. S. 296." The principle of that decision has been applied in later Maryland cases (*Brown v. Hobbs,* 132 Md. 559; *Gischell v. Ballman,* 131 Md. 260), and it is controlling in the present litigation.

The restriction imposed by the deed of the Northwest Real Estate Company upon sales by its grantees and their successors was clearly repugnant to the fee simple title which the deed conveyed. Its object was to deprive the grantees, until 1932, of the unrestrained power of alienation incident to the absolute ownership which the granting clause created. In *Clark v. Clark, supra,* the attempted restraint was for a period of ten years, and consisted of a requirement for consent by six other devisees, while here it is for a shorter period and the consent of a single but corporate grantor is the condition of a transfer. But in each instance the intended interference with the normal alienability of the fee simple estate devised or granted is equally apparent. As stated in *Tiffany on the Law of Real Property* (2nd Ed.) p. 2311, "The fact that a restriction upon the right to alienate a vested estate in fee simple is to endure for a limited time only does not, by the weight of authority, render the restriction valid." In addition to the cases cited by the author in support of that statement are a number collected in a note to *Latimer v. Waddell,* 119 N. C. 370, as reported in 3 L. R. A. (N. S.) 668. In *Murray v. Green,* 64 Cal. 367, it was said: "It is difficult to conceive of a condition more clearly repugnant to the interest created by the grant of an estate in fee simple than the condition that the grantees shall not alienate the same without the consent of the grantor. With such a condition, if valid, annexed to the grant, it would be neither a fee simple nor any other estate known to the law."

In practical effect the reservation in the deed before us would give the grantor company unqualified control for a term of years over the disposition of the property by sale or lease. The recital that the purpose of the restriction is to

maintain "a desirable high class residential section" and to enable the grantor "to pass upon the character desirability and other qualifications of the proposed purchaser or occupant" was evidently designed to explain rather than to limit the reservation of the power to forbid a transfer of the property by the grantees to any purchaser or lessee who failed to conform, in the opinion of the grantor's officers, to those indefinite standards. The existence of such a discretionary control would be plainly incompatible with the freedom of alienation which is one of the characteristic incidents of a fee simple title.

In *Jones v. Northwest Real Estate Company*, 149 Md. 271, the court considered a restriction, which is included also in the deed, from the same grantor, involved in this case, that no building should be erected on the property without the grantor's approval in writing, which could rightfully be refused if the proposed structure did not reasonably conform to the general plan of development in the area of which the granted lot formed a part, and it was held that such restrictions "did not interfere with the fee of the land to such an extent as to render them void."

It has been argued that the real object of the clause now under consideration is simply to regulate the use and occupancy of the property described in the deed. But the provision does not thus qualify its effect. It is a prohibition of any sale of the property prior to 1932, without the grantor's consent, and such a restraint on its alienation cannot be reconciled with the right of disposition inherent in the fee simple estate which has been granted.

Certain motions to dismiss the various appeals will be overruled, as they suggest no sufficient reason why the substantial question in the case should not be determined by this court upon the record now presented.

*Order and decree affirmed, with costs to the appellees in the first and third appeals.*

BOND, C. J., filed the following dissenting opinion.

The restraint upon alienation included in the deed to Einbrod and wife seems clearly enough to be one intended merely to give the developer of a suburban area of land power to control the character of the development for a time long enough to secure a return of his capital outlay, and to give early purchasers of lots and buildings some security in their own outlay. In those objects there is nothing against the public interest. We can hardly hold that the modern method of developing city or suburban areas as single large enterprises is detrimental to the public. On the contrary, it seems to be often the only method by which such areas can be conveniently and economically opened, so that houses may be provided upon convenient terms, with all the neighborhood necessities of streets, sewers, and the like ready at the outset. The venture of capital for this purpose appears to be distinctly a public benefit rather than a detriment, one which it is to the public advantage to encourage and promote rather than to hinder. But we know that there are real, substantial dangers to be feared in such ventures, and that· under the modern conditions of rapid city growth and rapid shifts of city populations, one of the most important risks is probably that which comes from the chance of invasion into the new neighborhood of an element of the population which the people to whom the developer must look for the return of his outlay will regard as out of harmony with them. However fanciful may be the aversions which give rise to it, and however deplorable they may be, to the developer they and their consequences must be as real as destructive physical forces. And if it is to the public interest that this method of development be encouraged rather than hindered, then practically there must be a public gain in removal or diminution of this deterring danger. And the temporary restraint on alienation which the parties here involved have adopted to that end must, I think, be viewed as in point of fact reasonable, and from the standpoint of the public interest actually desirable. And if this is true, then I venture to think there is no substantial reason why the law should interfere

with it, denying the parties the right to agree as they have agreed, or denying their agreement full validity.

The general prohibition of restraints on alienation by vendees has been based on three grounds. One has been that of a supposed contradiction between a grant of complete ownership and any qualification of it. That objection, as has been pointed out (3 *Tiffany, Real Prop.*, sec. 592), is a product of judicial fiat, and one of logicians rather than of practical men. A second, and a more substantial ground, is that the vendor in a conveyance embodying the restriction, having parted with his ownership, is now without interest in the restriction, and there are no rights protected by it. 3 *Tiffany, Real Prop.*, sec. 392. But that may or may not be true in a particular case, and however true it may be in a transaction concerning simply one piece of property, such as the law has had to consider almost always in the past, it is very commonly not true in modern conveyances of real property. And it is not true in the present instance, The third, and, according to the weight of authority, the only considerable ground for the law's interference, is that of public policy, or the public disadvantage in having property withdrawn from commerce and its improvement and development checked. 3 *Tiffany, Real Prop.*, sec. 392; *Gray, Restraints on Alienation*, sec. 21. But those detrimental consequences do not exist here. And if they do not exist, why should the law be taking a stand to resist them, even when by doing so it denies to parties a right to make an agreement which may in fact redound to the public advantage? Public policy, or a policy of the courts looking to the public interest, is a stand with relation to conditions as they exist, and arises from those conditions, or it is without purpose or justification.

Perhaps it is somewhat unusual, in the administration of the law with respect to restraints on alienation of real estate, to deal with the general prohibition as only an effort to accomplish certain purposes, and to test a particular restriction by these purposes, but it seems nevertheless right to do so. If I am not mistaken, this court has so dealt with a similar restraint in a bequest of personal property; and the rule

we are considering is one and the same when applied to conveyances of complete ownership in either personal or real property. *Brantly, Personal Property,* sec. 122. In *Williams v. Ash,* 1 Howard, 1, in an opinion by Chief Justice Taney, the Supreme Court of the United States upheld a restriction upon a legatee of slaves: "that he should not carry them out of the State of Maryland, or sell them to anyone; in either of which events, I will and desire the said negroes shall be free for life." In the opinion this was distinguished as a conditional limitation of freedom rather than a restraint upon alienation, but it has usually been regarded as no more nor less than a restraint. *Gray, Restraints on Alienation,* sec. 28; *Potter v. Couch,* 141 U. S. 296, 316, 317. In *Steuart v. Williams,* 3 Md. 425, 429, a similar question was presented to this court and *William v. Ash* was taken as having established the validity of such a clause. And I believe that if a plain restriction on a legatee's sale of slaves could come before the court today, we should agree that the lack of any public interest opposed to it, or rather the desirability of it, would save it from the bar of the general prohibition. See *Adams v. Anderson,* 4 H. & J. 558; *Price v. Read,* 2 H. & G. 291.

We have seen the absolute common law prohibition against restraints upon the exercise of a trade adapted to conditions of modern life by measuring particular restraints by the present public interest. 8 *Holdsworth, History of English Law,* 56-62; 31 *Harvard Law Review,* 193; *Guerand v. Dandelet,* 32 Md. 561, 566. The old prohibition of restraints on alienation has itself been adapted to later conditions in part. 3 *Holdsworth,* 85-86. Many modern courts have held valid restraints on alienation of real property limited as to time, or as to specified classes of vendees. *Roberts v. Boston,* 5 Cush. 198; *West Chester Ry. Co. v. Miles,* 55 Pa. St 209; *Plessy v. Ferguson,* 163 U. S. 537. Authorities collected in 38 *A. L. R.* 1185 note. In Maryland restrictions upon a vendee's use of property have been upheld, repugnant as these might be, logically, to the grant of an otherwise absolute title. *Peabody Heights Co. v. Willson,* 82 Md. 186. It is true that the allowance of such restrictions is distinguished on the ground that they are embodied only in incidental agreements and are

not qualifications on the estates granted, but assuming that such a distinction is a substantial one, it remains true that the freedom and power of the vendees in dealing with their property are qualified by them, and they have not been found to conflict with considerations of public policy, and so have not been interfered with.

The view I venture to urge, then, is that the general prohibition of restraints on alienation should be considered as having some relation to the facts to be dealt with; not that the law should be changed, but that there should be a recognition of change in the conditions with which the law has had to deal, and a discriminating pursuit among modern conditions of the one object always sought by the law, the protection of the public interest. And this is not to advocate the abandonment of a general rule, leaving the policy of the courts to be adjusted to each conveyance independently; there may be need of some fixed general standard for what has been termed predictability in the law, and that would necessitate ignoring some possible differences in cases. *Tide Water Canal Co. v. Archer,* 9 G. & J. 479, 528. But it has seemed to me that, whatever that general standard might be, the restraint adopted in the conveyance now being considered, limited as it is in time, and having a purpose and an effect in which no public disadvantage can in fact be found, need not and should not be included within the general prohibition to forestall a public disadvantage.