MEINECKE ET UX. *v.* GOEDEKE ET AL.

[No. 151, October Term, 1949.]

374

*Decided May 12, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Carroll H. Albaugh,* with whom was *Malcolm B. Tebbs* on the brief, for the appellants.

No appearance was entered and no brief was filed for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Conrad Meinecke and Katherine Meinecke, appellants, from a decree requiring them to specifically perform a contract for the sale of realty.

Since March, 1943, George B. Weber and wife had been renting from the appellants a tract of land with improvements in the Fourth Election District of Anne Arundel County, at times with seven other people living in the house on the property, for a rental of $50.00 per month.

On August 21st, 1943, George B. Weber, and his wife since deceased, parties of the second part, entered into an agreement with the appellants here, parties of the first part, to purchase a tract of land consisting of 20 acres more or less, together with the improvements thereon for the price of $5,000.00. At the time of the execution of the contract $300.00 was paid on the purchase price and $200.00 was payable in one year with interest at the rate of 6% per annum. The balance with interest at the rate of 6% was to be paid in monthly installments of $50.00 per month beginning September 11, 1943. The contract further provided: "All payments shall apply to the purchase price of the aforesaid property with proper deduction of 6% per annum on the unpaid balance, plus taxes and insurance to be paid by the parties of the second part to the parties of the first part." The contract provided as to a one-ninth outstanding interest in the property as follows: "(6) At the time of the conveyance to Conrad Meinecke, Jr. and Katherine Meinecke, his wife, by the heirs of Sophia Dent Moyan deceased, Juliet Chaney daughter of Rosalie Dent, sister to Sophia Dent Moyland deceased could not be found after a diligent search, however, her proportionate share of the proceeds of the sale are now on deposit for her use when if ever she or her heirs can be located for her or their signatures." The contract also provided as fol-

lows: "(10) Further, if the said parties of the second part shall fail to perform this contract or any part of the same for a period of thirty days during the existence of this contract between the parties hereto; then the parties of the first part shall have the right to declare this contract void as to the parties hereto, and the parties of the first part can retain amounts paid hereunder as rent, and also whatever improvements that might have been made during the existence of this contract, and the parties of the first part can take immediate possession of the aforementioned premises without legal process either at Law or Equity, and remove all parties, including the parties of the second part therefrom, without any restitution whatsoever." The parties of the first part also agreed, upon payment of the purchase price in full, at the expense of the parties of the second part, to "execute and deliver to the parties of the second part or his assigns, all their right, title and interest into the aforesaid mentioned property." This contract was drawn by Malcolm B. Tebbs, Esq., of the Baltimore Bar, brother-in-law of Mrs. Meinecke, one of the appellants. His wife, Mrs. Tebbs, the sister of Mrs. Meinecke and manager of the Modern Building Company, collected the payments from the appellees and managed the property.

During a period of five years about $3,000.00 was paid under the contract. The appellees were sometimes late with their payments but the appellants did not attempt to terminate the contract. In 1943 the appellees spent $300.00 for a new roof on the house, paid $75.00 to fix the bathroom, made some improvements in the living room, papered part of the house and installed a temporary pump. At the time of the execution of the contract of sale the appellees stated that the property was rather rundown. At the time of the hearing in this case the appellants claimed that the property was very much rundown while the appellees said that it was well kept. A witness called by the appellees testified, and the chancellor found that the property at the time of hearing was worth about $9,000.00 or $10,000.00.

Payments of $50.00 a month were received by the appellants up to and including the month of December, 1948. No payments were received from the appellees during January and February 1949. A claim was made by the appellees that they mailed $100.00 in cash to pay for the January and February rent. Mr. Weber said that this was mailed on March 1, 1949, and his daughter claimed to have actually mailed it and said it was posted in January. No return address was put on the letter and apparently payments had always been previously made by money order. Appellants say that this $100.00 was not received.

On December 11, 1948, $2,826.95 was due on the contract. Mrs. Tebbs testified that on January 15th, February 1st, and February 18, 1949, she sent bills to Mr. Weber for these payments and on February 24th she telephoned and talked to Mr. Weber's daughter, Mrs. Goedeke, and told her that she would have to have payment and that Mrs. Goedeke said she would pay it when she could get the money together. Again, on March 9th, Mrs. Tebbs sent a third bill to Mr. Weber for the three payments due January 11th, February 11th and March 11th, and at the bottom of the bill wrote the following: "According to the terms of your contract, this account must be paid not later than March 11, 1949. Mr. and Mrs. Meinecke are entitled to their money each and every month in accordance with the terms of your contract, unless payment is received on your (sic) before March 11, 1949, *we will have to enforce the terms of your contract.*" (Emphasis supplied.) On March 10, 1949, Weber went to see Mrs. Tebbs. He said at that time he had sufficient money to pay the contract in full. He admitted however that he never told this to Mrs. Tebbs. He said that he went to see how much of a balance was due on the contract. Mrs. Tebbs testified that Weber came to see her on March 10th, and told her that he appreciated her past kindnesses, that he had been living elsewhere since his wife died in 1946, that it was foolish for him to pay any more on the property, and "if you don't hear

from me by the 11th, you will know I have abandoned the property." This statement is denied by Weber.

On March 15th, 1949, Mr. Tebbs testified that he wrote a registered letter, return receipt requested, intended for Mrs. Goedeke. This letter advised her that "the contract is now void" and gave her until March 21, 1949 to vacate the premises. The letter however was addressed to "Mrs. Gettier." Mrs. Goedeke says she never received this letter and the appellants do not have the receipt. Appellants admit that apparently it was never received. On March 16, 1949, Weber purported to assign his interest in the contract to James A. Goedeke, one of the appellees here, without any notice to the appellants. On March 21st, 1949, the Goedekes mailed a money order to Mr. Tebbs in the amount of $200.00 to cover rent until April 11, 1949. Mr. Tebbs received this money order, drove down to the property and told appellees the contract was void. Accompanied by the appellees he went to the office of Goedeke's attorney, Mr. Sachse, where the matter was discussed. Mr. Tebbs told Mr. Sachse that he would return the $200.00 to the appellees if they would vacate the property. On April 1st Mr. Sachse, representing the appellees, wrote Mr. Tebbs offering to pay the entire balance due under the agreement of sale or to continue paying the installments of $50.00 per month. Both of these offers were rejected by Mr. Tebbs and he still retained the $200.00 sent him by Mr. Goedeke on March 21st, 1949.

Mr. Tebbs employed an attorney, Mr. Albaugh, to clear up the outstanding one-ninth interest to the property here in controversy and to two other lots in that title. The cost of clearing up the title to these three properties was seven or eight hundred dollars.

On July 25, 1949, the appellees here filed a bill of complaint in the Circuit Court for Anne Arundel County reciting in part the facts hereinbefore stated and asking among other things that the contract be specifically enforced either by the acceptance of monthly payments of $50.00 from the appellees as provided in the contract, or

by the acceptance of the full amount of the unpaid purchase price and the execution of a proper deed to George B. Weber or his assignee. After the filing of a joint demurrer and answer, testimony was taken in open court. On October 6, 1949, the chancellor passed a decree ordering the specific performance of the contract as written, the appellants having refused to accept the balance of the purchase price in a lump sum. From that decree the appellants appeal.

It will be noted that paragraph 10 of the contract, *supra,* is not self-executing. As pointed out by the chancellor, this clause does not say that upon failure of the purchaser to pay as specified the contract shall be void. On the other hand, it provides that if the purchasers shall fail to perform the contract or any part thereof for a period of thirty days the parties of the first part shall have the right *"to declare this contract void."* "The word 'void' means voidable at the vendor's election, and the condition may be insisted upon or waived, at his choice." *Stewart v. Griffith,* 217 U. S. 323, 30 S. Ct. 528, 529, 54 L. Ed. 782, 19 Ann. Cas. 639; *Rogers v. Dorrance,* 140 Md. 419, 424, 117 A. 564, 32 A. L. R. 573. The first intimation given the appellees of any intention on the part of the appellants "to declare this contract void" was at the bottom of the bill sent on March 9, 1949, hereinbefore set forth, in which the appellants said that "unless payment is received before March 11, 1949, we will have to enforce the terms of the contract." This was merely a notice by the appellants of an intention to declare the contract void in the future, and amounted to no more than a warning. *Shriver Oil Co. v. Interocean Oil Co.,* 157 Md. 341, 353, 146 A. 223. A further act declaring the contract void was necessary before Paragraph 10 of the contract, *supra,* came into effect. *Coster v. Arrow, Building & Loan Ass'n,* 184 Md. 342, 347-348, 41 A. 2d 83.

The registered letter of March 15, 1949, written by Mr. Tebbs to Mrs. Goedeke advising her that the contract was void admittedly was wrongly addressed and appel-

lants admit that it apparently was never received. Therefore no notice was given to the appellees that the contract was void until Mr. Tebbs drove out to the property on March 21st and so notified them, and told them that he would return the $200.00 if they would vacate the property. This notice of March 21st from Mr. Tebbs, voiding the contract, was too late as he then had retained the $200.00 in his possession, which was sufficient to bring the contract payments to date. Therefore, we are of opinion that the appellants did not exercise their privilege to void the contract during the period it was in default and the previous defaults were waived. *Kahn v. Janowski*, 191 Md. 279, 287, 60 A. 2d 519, 522.

As to the appellants' contention that the contract was abandoned by Mr. Weber we have only the testimony of Mrs. Tebbs on one side and that of Mr. Weber on the other, denying the abandonment. We agree with the chancellor that this was not sufficient evidence of abandonment.

Appellants further contend that the appellees should bear part of the cost of clearing the title to the land covered by the contract. As set out in Paragraph (6), *supra*, a representation was made that a proportionate share of the proceeds of sale were on deposit for the use of a missing heir if she could be located for her signature. The proceeds of sale apparently referred to the sale at the time the appellants bought the property. How much was retained to provide for this outstanding interest nowhere appears in the record in this case. The testimony shows that the appellants paid $700.00 or $800.00 to clear up the title to the property now in dispute and to two other lots. There is nothing in the record to indicate what proportion of this cost necessary to clear the title was chargeable to the property in question. Whether the amount retained was sufficient to pay this proportionate part, neither the chancellor nor we are able to determine from the record.

As the appellants refused to accept in a lump sum the balance of the purchase money due for the reason that

they desire the 6% interest on this balance, the chancellor was correct in decreeing that the balance of the payments be made at $50.00 per month as specified in the contract. The decree will be affirmed.

*Decree affirmed, with costs.*