581 A.2d 846

## METROPOLITAN LIFE INSURANCE COMPANY

v.

## PROMENADE TOWERS MUTUAL HOUSING CORPORATION.

**No. 94, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 8, 1990.

Charles A. Trainum, Jr. (John F. Hyland, Jr., Christopher J. Kersting, Trainum, Snowdon, Holland, Hyland & Deane, P.C., on brief), Washington, D.C., for appellant.

G. Vann Canada, Jr. (Miles & Stockbridge, on brief), Rockville, for appellee.

Argued before MOYLAN, WENNER and CATHELL, JJ.

CATHELL, Judge.

Metropolitan Life Insurance Company ("Metropolitan") appeals from an order of the Circuit Court for Montgomery County which granted summary judgment for Promenade Towers Mutual Housing Corp. ("Promenade").[1] The trial court, in granting Promenade's Motion for Summary Judgment, found that a subsequent note and deed of trust incorporated prior notes and a deed of trust by reference. The trial court also found, contrary to what it believed the law to be, that a debtor has a right to prepay a note and deed of trust even when the instruments are silent and do not expressly grant that right. The issues as necessarily modified are:[2]

1. Did the trial court err in holding that as a matter of law a promissory note can be prepaid at any time unless the note explicitly prohibits prepayment?

2. Did the trial court err in holding that an instrument, as amended, which purported to restate a promissory note in full nevertheless incorporated by reference prepayment provisions from the prior note?

We hold that the trial court erred in its findings on both issues and reverse. We first address the pertinent facts.

## THE FACTS

Promenade is the owner of a 24–acre tract of land in Montgomery County containing one thousand seventy-one

---

1.  This appeal is illustrative of the adage that, as Polonius advised his son Laertes, it is better to "neither a borrower nor a lender be." W. Shakespeare, *Hamlet* Act I, scene III 75.

2.  We have reversed the sequence of issues presented in the appellant's brief, so that we may initially address a matter of apparent first impression in Maryland.

(1,071) apartments. Promenade is a successor in interest to Landcon Associates Phase One ("Landcon"). While the tract was owned by Landcon, it encumbered the tract by executing two separate deed of trust notes and a deed of trust creating liens on the property. The two deed of trust notes and deed(s) of trust were then, by virtue of an agreement, consolidated into one indebtedness in the amount of $23,000,000 secured by one note and one deed of trust.[3]

Thereafter in 1980, the parties (or their predecessors in interest) modified the consolidated note and deed of trust ("First Modification"). This First Modification contained the following clause:

> From and after July 1, 1989, Borrower shall have the right to prepay, without the imposition of any prepayment fee, the entire unpaid principal sum evidenced by this Note, but no part thereof.... There shall be no right of prepayment prior to July 1, 1989.

The interest rate stated in the First Modification was fourteen percent (14%).

Thereafter in 1986, the note and deed of trust were again modified and amended by express agreement of the parties ("Second Modification"). The Second Modification provided that:

> 3. The Consolidated Note is hereby modified *and amended* so that, from and after the date of this Agreement, the Consolidated Note shall read *and be deemed to read in full* as follows.... [Emphasis added]

The stated interest rate was 11.875%. That rate, of course, was a substantial reduction from the previous 14%. The Second Modification omitted the previous express right of prepayment; thus the Second Modification contains no pre-

---

**3.** As far as we can discern, the Record Extract does not contain a copy of this "consolidated note."

payment provision.[4]  Subsequently, Promenade sought to refinance the project and informed Metropolitan of its desire to prepay the indebtedness.  Metropolitan informed Promenade that it would not permit the prepayment of the indebtedness prior to maturity.

Promenade filed for declaratory and injunctive relief to resolve the issues alleging that the position taken by Metropolitan constituted an unreasonable restraint of alienation in respect to real property.  During the course of the proceedings in the trial court, Promenade also raised the issues of the intention of the parties, construction of the agreement, and incorporation by reference.[5]

I

May the indebtedness evidenced by a promissory note and
    deed of trust be prepaid at the sole option of the
    borrower when the instruments contain no provision for
    prepayment?

Appellee understandably urges us to hold that such prepayment is permitted without penalty where the instrument is silent.  It asserts that a contrary holding would create an unreasonable restraint on alienation.  It further suggests that its entreaties in that regard are not grounded in the law of contracts, but in the "public policy of the State of Maryland."  In support, Promenade cites several irrelevant Maryland cases holding that certain restraints on alienation are unreasonable and thus void as against public policy.[6]

---

**4.** This Second Modification was not a short form modification.  It restated in full, as amended, the promissory note, and that amended note was actually executed within the body of the agreement.

**5.** These issues, though not addressed in Promenade's Complaint for Declaratory Judgment, Mandatory Injunction and other Relief, were raised in its Memorandum of Points and Authorities in Support of Motion for Summary Judgment.

**6.** The cases cited are *Northwest Real Estate Company v. Serio,* 156 Md. 229, 144 A. 245 (1929); *Gischell v. Ballman,* 131 Md. 260, 101 A. 698 (1917); *Clark v. Clark,* 99 Md. 356, 58 A. 24 (1904); *Stansbury v.*

Promenade concedes that the majority rule is that "absent an express contractual reservation of a right of prepayment, a borrower does not have the unilateral right to retire a mortgage debt prior to maturity." It nevertheless argues that, whereas the Maryland courts have never addressed this issue, we should adopt the minority rule stated in the singular case of *Mahoney v. Furches*, 503 Pa. 60, 468 A.2d 458 (1983), which held that, absent a clause regarding prepayment, a right of prepayment presumptively existed. Promenade asks us to adopt this minority rule and reject the majority rule "as no longer applicable in modern real estate financing."[7]

### The Majority Rule

A brief review of the cases confirms our belief that the rule described, *supra*, by Promenade and relied upon by Metropolitan, sometimes referred to as the rule of "perfect tender in time," has been a part of the common law throughout this century and is equally applicable in the "modern" world of real estate financing. At common law, in the absence of a provision allowing prepayment, a presumption exists that the payee is under no obligation to accept payment prior to maturity. *MacIntyre v. Hark*, 528 So.2d 1276 (Fla.Dist.Ct.1988).[8] Some jurisdictions do not

---

*Hubner*, 73 Md. 228, 20 A. 904 (1890). *Northwest* involved a provision that expressly prohibited a reconveyance without the consent of a prior owner; *Gischell, Clark* and *Stansbury* all involved a fee simple (or equivalent) devise in a will with a subsequent express limitation against reconveyance. The nature of the restraint in each of these cases was found to be unreasonable—not the method in which the restraint was created. None, of these cases have even a remote connection with the issues in the case at bar.

**7.** We fail to perceive why the majority rule is any less applicable under current real estate financing involving institutions and/or commercial parties than it was under the real estate financing practices of prior times.

**8.** *See also Hanson v. Fox*, 155 Cal. 106, 99 P. 489 (1909); *Lazzareschi Inv. Co. v. San Francisco Federal Savings & Loan Ass'n*, 22 Cal.App.3d 303, 99 Cal.Rptr. 417 (1971); *Atlantic Life Ins. Co. of Richmond v. Wolf*, 54 A.2d 641 (D.C.1947) (neither borrower nor lender has right to

allow prepayment even if the borrower offers to pay the full amount of interest. *See, e.g., Westminster Investing Corp. v. Equitable Assn. Soc. of U.S.*, 443 F.2d 653 (D.C. Cir.1970) (dictum); *McCausland v. Banker's Life Ins. Co.*, 110 Wash.2d 716, 757 P.2d 941, 944 (1988).[9] This is true even where a borrower attempts to use an "acceleration on default" clause, similar to the one in the note *sub judice*, to force a prepayment by defaulting on installment payments and then demanding an acceleration. In such a case, the prepayment clause will be interpreted to confer only on the lender an option to accelerate the note's maturity. *Peter Fuller Enterprises, Inc. v. Manchester Savings Bank*, 102 N.H. 117, 152 A.2d 179 (1959). Even when a purchase contract provided that a sum was to be paid by a definite time "if not sooner paid," it has been held that a prepayment right was not conferred. *Kruse v. Planer*, 288 N.W.2d 12 (Minn.1979). *See also Mandella v. Russo*, 294 So.2d 598 (La.App.1974).

Even where a statute prohibits prepayment penalties, appellate courts have refused to require prepayment. In *Hatcher v. Rose*, 97 N.C.App. 652, 389 S.E.2d 442 (1990), the statute stated that "[n]o prepayment fees shall be contracted ... otherwise a lender and a borrower may agree on any

---

advance the maturity date); *Carpenter v. Winn*, 39 Colo.App. 238, 566 P.2d 370 (1977); *In re Agostini*, 42 Del. 347, 33 A.2d 306 (1943) (same); *McCarty v. Mellinkoff*, 118 Cal.App. 11, 4 P.2d 595 (1931) (lender had the right to refuse to accept payment prior to maturity); *Baldwin v. Corcoran*, 320 Mo. 813, 7 S.W.2d 967 (1928); *Wilson v. Corcoran*, 73 Mont. 529, 237 P. 521 (1925); *Goetz v. Hubbell*, 66 N.D. 491, 266 N.W. 836 (1936); *Henderson v. Guest*, 197 Okl. 443, 172 P.2d 605 (1946) (rule is that the parties may not demand or require acceptance of prepayment prior to date of maturity); *Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396 (1984) (analogizing lack of prepayment provision to lack of clause requiring security); *Peryer v. Pennock*, 95 Vt. 313, 115 A. 105 (1921). *But see Skyles v. Burge, infra*, where a Missouri court appears to be accepting the *Mahoney* rationale.

9. "In the case of a debt secured by mortgage, as in the case of any other debt, the debtor has no right to insist upon making payment before the maturity of the debt, even though he tenders the principal and also the interest calculated up to the time of maturity." 5 H. Tiffany, *Law of Real Property* 488 (3d ed. 1939). (footnotes omitted)

terms as to the prepayment of a home loan." The court held:

> [The statute] only prohibits prepayment *penalties* on certain home loans; it does not address the issue of prepayment of the loan itself. If the General Assembly ... intended to amend the common law regarding prepayment of loans where the loan agreement is silent, they could have used the straightforward and unequivocal language subsequently enacted....

*Id.* 389 S.E.2d at 444. (Emphasis in original)

The justification for this rule is that if the lender is forced to accept prepayment which it did not bargain for, it would be exposed to a lesser than anticipated rate of return, possibly adverse tax consequences, and added reinvestment costs. *Warrington 611 Associates v. Aetna Life Ins.,* 705 F.Supp. 229 (D.N.J.1989); *Northway Lanes v. Hackley Union National Bank and Trust Co.,* 334 F.Supp. 723 (W.D. Mich.1971), *aff'd,* 464 F.2d 855 (6th Cir.1972). *See also* 3 R. Powell, *Powell on Real Property* § 37–279, par. 460[3] (1987) (the basis for this traditional rule is that the lender is entitled to the agreed upon interest over the term of the loan). Thus, when sophisticated parties bargain in a commercial setting, the lender may refuse to accept prepayment unless the contract so allows.[10] *Houston North Hospital Properties v. Telco Leasing, Inc.,* 680 F.2d 19, *aff'd,* 688 F.2d 408 (5th Cir.1982) (applying Illinois law); *CHG International, Inc. v. Barclays Bank,* 897 F.2d 1479 (9th Cir. 1990) (applying Washington State law).

### The Minority Rule

The minority rule is stated in *Mahoney v. Furches,* 468 A.2d 458 (Pa.1983). In reviewing that case, we are con-

---

**10.** The text writers generally agree that "it has thus become very common for mortgage documents to provide for a prepayment privilege in order to counter the common law rule that prepayment is not allowed unless the parties expressly agree to it in the mortgage or in subsequent negotiations." 3 R. Powell, *Powell on Real Property* § 37–279, par. 460[3] (1987).

strained to address what we perceive to be contradictions in the Pennsylvania Court's rationale. That court states:

We may agree that the use of the mortgage for private investment purposes is increasing and may also support a policy encouraging such use. To do so, however, we need not embrace the conclusion reached by the Connecticut court and ignore other important considerations merely to accommodate this trend. Rather, and indeed because of this increased use of the mortgage as an investment instrument, we must consider the policy encouraging such use in light of the implications it might have on the free alienability of land—a consideration we feel is the dominant one, since the fundamental purpose of the mortgage note in most instances is to secure a debt incurred in the purchase of land from which the debt arises rather than to secure investment income for the mortgagee.[11]

\* \* \* \* \* \*

Taking cognizance of the general policy in this Commonwealth and elsewhere against restraints on alienation, we find it would be against such policy to presume, simply from the absence of a clause so allowing, that a mortgagor could not pay off his debt and alienate his land as he so desired. Instead, *we think it wiser to raise a presumption of a right to prepayment of the note where a mortgage is silent as to that right.* This presumption could be rebutted by showing a contrary intent mutually manifested by the parties. Such a presumption would not work a hardship on the mortgagee since, in virtually all instances, he is the drafter of the mortgage note and can thus include within the note a clause stating that the note is not subject to prepayment. This would put the mortgagor on notice that he will in all probability be restrained from selling the land for the duration of the term. If he signs the note containing

---

11. The Connecticut case referred to is *Dugan v. Grzybowski,* 165 Conn. 173, 332 A.2d 97 (1973).

such a provision, he will then be bound by it even though it may restrain his right to its sale or use.

*Id.* at 461. (Emphasis added)

■ We understand the Pennsylvania decision to mean that an express provision prohibiting prepayment would not be an unreasonable restraint on alienation while an implied prohibition, due to the instrument's silence on prepayment, would be. It is our understanding that, *contrary to Mahoney*, an invalid restraint on alienation is generally determined by the nature of the restraint, not by the manner in which the restraint is created. The *Mahoney* court held that, where a mortgage note is silent as to the right of prepayment, there arises a presumption that the debt may be prepaid. It did so on the basis that the method of prohibition of prepayment, *i.e.*, silence, created an invalid restraint on alienation.[12] While we are sympathetic with and cognizant of the effects of such clauses, the unreasonableness, if any, of a restraint exists whether it is written or presumed. We note also that the *Mahoney* court apparently revised or significantly modified prior Pennsylvania decisions in its ruling.[13]

The only other decision we have been able to discover, indicating an acceptance of the *Mahoney* holding, is the

___

**12.** We emphasize that these types of agreements are not silent on the matter of payment. The manner of payment is expressly set out. The interpretation placed upon the language of payment by the Pennsylvania court inserts different and contradictory language in the parties' agreement based upon the creation of a presumption from nothing—*i.e.*, silence.

**13.** The Superior Court of Pennsylvania in *Beth–June, Inc. v. Wil–Avon Merchandise Mart, Inc.*, 211 Pa.Super. 5, 233 A.2d 620 (1967), citing *Hensel v. Cahill*, 179 Pa.Super. 114, 116 A.2d 99 (1955), stated:

However, a mortgage which is payable within a certain number of years, if it calls for installments in an amount which will evenly amortize the debt throughout the term of the obligation does not afford a mortgagor the right of prepayment, and the installments are the minimum which must be paid and the maximum which must be accepted by the mortgagee.

The *Mahoney* court quoted the above passage before holding to the contrary.

intermediate appellate court decision of the Missouri Court of Appeals in *Skyles v. Burge,* 789 S.W.2d 116 (Mo.1990). That court gave the issue an evolutionary treatment, tracing it from English law. The Missouri court suggested that prior to the 19th century, prepayment was not prohibited when the instrument was silent; this was described in ancient times as "the law of the 'gage.'" That court then discussed the "Welsh mortgage," which contained no payment provisions at all, before it finally acknowledged that "[s]ince the early nineteenth century, the general rule has been that a debtor cannot, without the lender's consent, prepay a mortgage debt." *Id.* at 118. The Missouri court then described the early case of *Abbe v. Goodwin,* 7 Conn. 377 (1829) as embracing the rule of "perfect tender in time," which the court read as holding that a mortgagee could not even be compelled to accept, in advance, payment in full including future interest, absent permitting provisions.

After accepting that the "perfect tender in time" rule remains in effect in most jurisdictions, the Missouri court apparently departed from that rule, embracing the *Mahoney* reasoning:

> Despite the Abbe case and other historical antecedents of the rule of perfect tender in time, it would seem, at least in terms of residential real estate, that a mortgagor could discharge the debt by payment in full of all the principal due and all the accrued and unaccrued interest that would be due over the term of the note.

*Skyles,* at 119.

After this apparent embrace of the *Mahoney* holding, the court incongruously went on to utilize a Missouri statute, applying only to residential real estate, to reverse the trial court.[14]

---

**14.** Whether the language of the *Skyles* Court approving the *Mahoney* view is sufficiently clear to constitute a holding, in view of its subsequent reliance on statutory authority, is unclear and will have to await subsequent treatment by the Missouri courts.

## The Maryland Law

Both parties have informed us that the present case is one of first impression in Maryland. Their assertion is largely correct; however, several Maryland cases exist that address the prepayment issue in other contexts. The line of cases which we will discuss is consistent with the majority rule.

A basic principle of contract law is that a party to a contract does not have any unilateral right to modify, and courts may not redraft, an agreement merely because it turns out to be disadvantageous. *Vincent v. Palmer*, 179 Md. 365, 372, 19 A.2d 183 (1941). One of the issues in the case of *Meinecke v. Goedeke*, 195 Md. 373, 73 A.2d 445 (1949), was whether a contract purchaser of land would be permitted to make a lump sum payment of the total sum due under the contract where the contract was silent as to prepayment, and the seller objected. The trial court ruled that he could not prepay. The Court of Appeals affirmed, saying:

> As the appellants refused to accept in a lump sum the balance of the purchase money due for the reason that they desire the 6% interest on this balance, the chancellor was correct in decreeing that the balance of the payments be made at $50.00 per month as specified in the contract.

*Id.* at 382–83, 73 A.2d 445.

The Court in *Great United Realty Co. v. Lewis*, 203 Md. 442, 450, 101 A.2d 881 (1953) was again concerned with a contract for the sale of realty. It stated: "... the law is settled that a contract between competent parties cannot be rescinded by either party *without an option to do so* or without the other parties consent.... A party to a contract has no right to rescind it merely because he finds in the light of changed conditions that he made a bad deal." (Emphasis added) This rule has been applied in a case involving a contract which forbade prepayment of the monthly payments. The Court in *Pierson v. Pyles*, 234 Md. 119, 122–23, 197 A.2d 890 (1964), stated that the appellee's

position was that it had entered into the provisions preventing prepayment for investment purposes and "that to permit the vendees to prepay the purchase price would deprive the estate of its legal right under the contract." The Court agreed.

We affirmed in a case where a contract contained a clause requiring payment of the full amount of interest in the event of prepayment. We adopted a portion of the trial court's finding, which we quoted in part:

> That provision created and conferred upon the lender ... a valuable contractual right of which she should not, and cannot, be deprived.... Agreeable, as it was, to the buyers, obligors, guarantors and transferees, it constitutes a contractual obligation with which the Court should not, and cannot, tamper.

*Connolley v. Harrison,* 23 Md.App. 485, 491, 327 A.2d 787, *cert. denied,* 274 Md. 727 (1974). More recently, in *Andresen v. Young Contracting Co.,* 32 Md.App. 98, 359 A.2d 111, *cert. denied,* 278 Md. 715 (1976), we examined a note which contained no right of prepayment, and concluded that the debtor was required to make payments according to the terms of the note.

In discussing the policy reasons inherent in the majority rule, the Supreme Court of Washington opined:

> If there is a need for regulations to be imposed in commercial loans regarding the amount of prepayment penalties that can be demanded, that subject is more appropriately addressed to the legislature. As [a] California court observed in that regard,
>
> > [I]nstitutions which lend vast sums of money should be informed, not by judgments after the facts on a case-to-case basis, but by laws or regulations which are in existence in advance of the undertaking to execute loans, of the validity or invalidity of terms that are commonly used.

*McCausland v. Bankers Life Ins. Co.,* 110 Wash.2d 716, 757 P.2d 941, 945 (1988) (quoting *Lazzareschi Inv. Co. v.*

*San Francisco Federal Savings & Loan Ass'n,* 22 Cal. App.3d 303, 311, 99 Cal.Rptr. 417 (1971)). We agree.

We adopt the majority rule and hold that where a contract of indebtedness does not contain a provision permitting prepayment, that indebtedness may not be prepaid by the borrower without consent of the lender unless a statute provides otherwise.

## II

Did the trial court err in holding that an instrument, as amended, which purported to restate a promissory note in full nevertheless incorporated by reference prepayment provisions from the prior note?

The final issue we shall resolve concerns construction of the writing itself. The trial court concluded that the prepayment clause of the First Modification was incorporated into the Second Modification by reference, and that it survived as part of the Second, because the prepayment clause in the first modification was not expressly eliminated. His conclusion was legally incorrect.

As a threshold matter, there was no dispute of fact, so the "clearly erroneous" standard of review urged upon us by Promenade and set forth in Md. Rule 8–131(c) is inapplicable. *Sica v. Retail Credit Co.,* 245 Md. 606, 227 A.2d 33 (1966); *Suburban Properties, Inc. v. Mayor and Council of Rockville,* 241 Md. 1, 6, 215 A.2d 200 (1964). The construction of a written contract is a matter of law to be resolved by the trial judge, and we review it accordingly. *James Julian, Inc. v. State Highway Administration,* 63 Md.App. 74, 94, 492 A.2d 308 (1985). The applicable rules of construction were succinctly stated by the Court of Appeals in *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985):

It is well settled that Maryland follows the objective law of contracts. A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person ... meant *at*

*the time it was effectuated.* In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court *must* presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean. [Emphasis added, citations omitted]

The agreement's preamble states: "WHEREAS, Borrower, Beneficiary, and Trustee *desire to modify* the Consolidated Note and Consolidated Deed of Trust, all as hereinafter set forth." (Emphasis added) Then in Paragraph Three, the agreement states: "The Consolidated Note is hereby modified and *amended* so that, from and after the date of this Agreement, the Consolidated Note shall read *and be deemed to read in full* as follows...." (Emphasis added) The note itself is then set forth, and after it, Paragraph Four declares that "Borrower hereby confirms and reaffirms the terms, covenants and conditions of the Consolidated Note, *as amended hereby,* and hereby confirms and reaffirms its promise to pay to the Beneficiary ... the full principal ... with interest thereon, all in accordance with the terms of the Consolidated Note, *as amended hereby.*" (Emphasis added)

The test for ambiguity is whether the terms are reasonably susceptible to two or more meanings. *P.V. Properties v. Rock Creek Village Associates Limited Partnership,* 77 Md.App. 77, 549 A.2d 403 (1988). After having read the Second Modification as a whole, we conclude that there is no possible significance to be gleaned from the terms in that modification other than their obvious meaning.

The key terms emphasized *supra* are not defined in the contract, so we must ascribe to them their ordinary meanings. This is best done by referring to their dictionary definitions: "In full" means "Complete; giving all details." *Black's Law Dictionary* 781 (6th ed. 1990). "Modify" is defined as to "alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce." *Id.* at 1004. "Amend" is defined as to "change for the better by removing defects or faults," *id.* at 80, and "amendment" means to "alter by modification, *deletion,* or addition." *Id.* at 81. (Emphasis added) *See also Random House Dictionary of the English Language* 47 (unabridged ed. 1983) (amendment defined as "a change made by correction, addition, or deletion"). According to these definitions, the Second Modification has excluded the prepayment terms embodied in the First Modification.[15]

When the terms of a contract such as this are clear and unambiguous, the trial court may not rewrite them, as the trial judge did in the case at bar, even to avoid hardship to the parties. *Stueber v. Arrowhead Farm Estates,* 69 Md.App. 775, 780, 519 A.2d 816 (1987). The function of the trial court was to apply the law as evidenced by the clear language which created a contract of indebtedness silent as to any right of prepayment. The court's failure to do so constituted reversible error.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.

---

15. Other jurisdictions concur with our definitions of these terms. *See, e.g., Foshee v. Mims,* 279 Ala. 414, 186 So.2d 129, 130 (1966) (the word "full" is synonymous with "complete"); *People v. Sarver,* 102 Ill. App.3d 255, 57 Ill.Dec. 834, 429 N.E.2d 1108 (1981) ("[a]n amendment is that which alters 'by modification, deletion or addition'"); *Matter of Meekins,* 554 P.2d 872, 875 (Okla.App.1976) ("modify" defined as "'to alter; ... limit, reduce'").